1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3        SAN JOSE DIVISION

4

5    UNITED STATES OF AMERICA,        )   CR-18-00567 LHK
                                      )
6                    PLAINTIFF,       )   SAN JOSE, CALIFORNIA
                                      )
7            VS.                      )   DECEMBER 11, 2019
                                      )
8    JONATHAN WELLS,                  )   PAGES 1-62
                                      )
9                    DEFENDANT.       )
     _____  )

10

11

12            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
13            UNITED STATES DISTRICT JUDGE

14

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                             BY:  SCOTT SIMEON
17                           150 ALMADEN BOULEVARD, SUITE 900
                             SAN JOSE, CALIFORNIA  95113
18

19    FOR THE DEFENDANT:     FEDERAL PUBLIC DEFENDER'S OFFICE
                             BY:  DEJAN M. GANTAR
20                           55 SOUTH MARKET STREET, SUITE 820
                             SAN JOSE, CALIFORNIA  95113
21

22    PROBATION OFFICER:     KAREN MAR

23    OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                                   CERTIFICATE NUMBER 9595
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
1        SAN JOSE, CALIFORNIA                    DECEMBER 11, 2019

2                        P R O C E E D I N G S

3           (COURT CONVENED AT 10:03 A.M.)

4               THE CLERK:  CALLING CASE 18-567, UNITED STATES VERSUS

5    JONATHAN WELLS.

6               MR. SIMEON:  GOOD MORNING, YOUR HONOR.

7           SCOTT SIMEON FOR THE UNITED STATES.

8               MR. GANTAR:  GOOD MORNING, YOUR HONOR.

9           DEJAN GANTAR APPEARING FOR MR. WELLS.  HE IS PRESENT OUT

10   OF CUSTODY.

11              OFFICER MAR:  AND GOOD MORNING, YOUR HONOR.

12          KAREN MAR WITH PROBATION.

13              THE COURT:  GOOD MORNING AND WELCOME TO EVERYONE.

14          MR. WELLS, DID YOU READ AND DISCUSS YOUR PRESENTENCE

15   REPORT WITH YOUR ATTORNEY?

16              THE DEFENDANT:  YES, WE DID.

17              THE COURT:  OKAY.  ALL RIGHT.  I HAVE SOME QUESTIONS,

18   AND THEN I'LL GIVE MY TENTATIVE AND I'D BE HAPPY TO HEAR FROM

19   EVERYONE ON THE TENTATIVE.

20          SO LET ME ASK, SO MR. WELLS IS 47 YEARS OLD.  WHAT WAS HIS

21   EMPLOYMENT, IF ANY, AFTER HE GRADUATED FROM CABRILLO COLLEGE IN

22   1996, UNTIL 2003?  BECAUSE THE WORK HISTORY STARTS IN 2003.  SO

23   WHAT DID HE DO IN THAT SEVEN, EIGHT YEAR PERIOD?  THERE'S

24   NOTHING IN THE P.S.R.

25              MR. GANTAR:  SO MY UNDERSTANDING IS MR. WELLS
```

1      IMMEDIATELY AFTER THAT BEGAN SHEET METAL CONSTRUCTION, WHICH

2      IS, I THINK, WHAT HE WAS DOING MOST RECENTLY AS IS REFLECTED IN

3      THE P.S.R.

4              THE COURT:  WELL, THE P.S.R. JUST BEGINS WITH

5      DECEMBER 2003, SAYING HE WAS EMPLOYED AS A SHEET METAL

6      FABRICATOR AND INSTALLER.  SO IT IS SILENT ON ANYTHING BEFORE

7      2003.

8          OFFICER MAR, WHAT WAS YOUR SENSE?

9              OFFICER MAR:  I DID NOT RECEIVE ANY INFORMATION FROM

10     DEFENSE COUNSEL OR THE DEFENDANT PRIOR TO 2003.

11             MR. GANTAR:  AND I'M HAPPY TO PROVIDE SOME BACKGROUND

12     ON THAT, TOO, YOUR HONOR.

13         SO WHAT MR. WELLS, AS FAR AS I CAN REMEMBER, WHAT HE COULD

14     PROVIDE TO PROBATION TO ESTABLISH HIS HISTORY OF EMPLOYMENT WAS

15     ESSENTIALLY A HANDWRITTEN LEDGER OF HIS UNION EMPLOYMENT DURING

16     THAT TIME, WHICH OBVIOUSLY ISN'T A GREAT DOCUMENT TO ESTABLISH

17     THAT.

18         WE DID SIGN A WAIVER FOR PROBATION TO OBTAIN EMPLOYMENT

19     INFORMATION FROM THE UNION.

20             THE COURT:  WHEN YOU SAY "DURING THAT TIME," DO YOU

21     MEAN 2003 TO 2014, WHICH IS WHAT'S IN PARAGRAPH 102 OF THE

22     P.S.R.?  OR YOU MEAN FROM 1996 THROUGH DECEMBER OF 2003?  WHICH

23     TIME PERIOD ARE YOU REFERRING TO?

24         (DISCUSSION OFF THE RECORD BETWEEN MR. GANTAR AND THE

25     DEFENDANT.)

1          MR. GANTAR:  SO I'M NOT SURE IF THE COURT HEARD THAT.

2     FROM 2000 TO 2016, MR. WELLS WAS A PART OF THE UNION, AS IS

3     REFLECTED IN THE P.S.R.

4          I, UNFORTUNATELY, DON'T HAVE THAT HANDWRITTEN LEDGER IN

5     FRONT OF ME, SO I'M NOT SURE HOW --

6          THE COURT:  I DON'T SEE WHERE IT SAYS HE WAS PART OF

7     THE UNION STARTING IN 2000.

8          THE DEFENDANT:  THAT WAS NOT --

9          THE COURT:  THIS IS WHAT THE P.S.R. SAYS, PARAGRAPH

10    102.  "FROM DECEMBER 2003 TO DECEMBER 2014, THE DEFENDANT WAS

11    EMPLOYED AS A FULL-TIME SHEET METAL FABRICATOR AND INSTALLER

12    FOR VARIOUS COMPANIES," AND THEN IT LISTS ALL THESE COMPANIES.

13         AND THEN IT SAYS HE WAS PAID FULL-TIME UNION SCALE AND WAS

14    LAID OFF AT EACH COMPANY, WITH THE EXCEPTION OF GARZA PLUMBING,

15    AS THAT COMPANY LEFT THE UNION.

16         SO -- JUST POINT ME TO THE RELEVANT PARAGRAPH OF THE

17    P.S.R., PLEASE.

18         MR. GANTAR:  I THINK THAT'S IT, YOUR HONOR.  I'M NOT

19    SURE WHETHER THE P.S.R. SPECIFICALLY REFLECTS THAT HISTORY.  I

20    DON'T BELIEVE THERE'S ANY DISPUTE THAT MR. WELLS WAS EMPLOYED

21    DURING THAT TIME.

22         AGAIN, I'D HOPED THAT PROBATION WOULD BE ABLE TO OBTAIN

23    THAT INFORMATION DIRECTLY FROM THE UNION.

24         WHEN THE DRAFT P.S.R. HAD INITIALLY COME IN, I HAD

25    REQUESTED THAT PROBATION GO AHEAD AND DO THAT.

1           BUT IT APPEARS, AS IS REFLECTED IN THE FINAL P.S.R., THAT

2     PROBATION DID EVENTUALLY MAKE AN ATTEMPT TO OBTAIN THAT

3     INFORMATION FROM THE UNION, BUT THE UNION I GUESS DIDN'T

4     RESPOND TO THE REQUEST.

5               OFFICER MAR:  AND, YOUR HONOR, THE UNION DID RESPOND

6     AFTER THE FINAL WAS DISCLOSED.  HOWEVER, THEY INDICATED THAT

7     MR. WELLS WAS A MEMBER OF THE UNION, BUT NOT EMPLOYED BY THE

8     UNION, AND THAT EACH INDIVIDUAL COMPANY WOULD HAVE TO BE

9     CONTACTED IN REGARDS TO EMPLOYMENT STATUS.

10              THE COURT:  I SEE.  SO WHAT DID HE DO FROM 1996 TO

11    2000?

12              THE DEFENDANT:  I WAS WORKING FOR J.C. HEATING IN

13    SANTA CRUZ.

14              THE COURT:  OKAY.

15              THE DEFENDANT:  THAT WAS FROM '91 TO -- BECAUSE I WAS

16    WORKING PART-TIME DURING COLLEGE.

17              THE COURT:  OKAY.  AND THEN AFTER COLLEGE, AFTER

18    1996?

19              THE DEFENDANT:  STILL WORKED AT THE SAME COMPANY.

20              THE COURT:  PART-TIME?

21              THE DEFENDANT:  FULL-TIME.

22              THE COURT:  ALL RIGHT.  WELL, IT WOULD HAVE BEEN NICE

23    TO INCLUDE THAT FULL HISTORY.  I MEAN, YOU CAN PUT THE BLAME ON

24    PROBATION, BUT REALLY THE DEFENDANT KNOWS THEIR OWN HISTORY AND

25    THEIR OWN EMPLOYER'S CONTACT INFORMATION THE BEST.  SO IT WOULD

1        BE IDEAL.

2              HE'S NOT WORKING NOW, SO HE WOULD HAVE HAD TIME TO TRY TO

3        GET THAT INFORMATION.  THAT WOULD HAVE BEEN BETTER.  BUT IT'S

4        OKAY.

5              ARE THE BOY SCOUTS AWARE OF THIS CONVICTION?

6                    THE DEFENDANT:  YES.

7                    THE COURT:  HAVE THEY BEEN NOTIFIED?

8                    MR. SIMEON:  YES, YOUR HONOR.

9                    THE COURT:  OKAY.  WILL HE STILL BE ABLE TO WORK WITH

10       THEM, OR -- OR THEY'RE DECIDING THAT?

11                   MR. SIMEON:  I HAVE NO IDEA, YOUR HONOR.

12                   THE COURT:  OKAY.  BUT THEY ARE AWARE OF THE

13       CONVICTION?

14                   MR. SIMEON:  YES, YOUR HONOR.

15                   THE COURT:  OKAY.  WHAT IS THE PROCESS -- YOU WANT

16       THE RESTITUTION HEARING TO BE SET 90 DAYS OUT?  IS THAT

17       CORRECT?

18                   MR. GANTAR:  SO WE BRIEFLY DISCUSSED THIS WITH THE

19       GOVERNMENT BEFORE TODAY'S HEARING.  I THINK WHAT WE'D BE

20       REQUESTING TODAY IS TO SET A DATE IN FEBRUARY FOR A STATUS

21       REGARDING RESTITUTION.

22             BOTH I AND THE GOVERNMENT ARE RATHER CONFIDENT, I THINK

23       IT'S FAIR TO SAY, THAT WE WILL BE ABLE TO RESOLVE THE

24       RESTITUTION ISSUE BY WAY OF STIPULATION.

25                   THE COURT:  UM-HUM.

1          MR. GANTAR:  IF WE'RE NOT AT THAT FEBRUARY DATE, THEN

2     WE WOULD REQUEST A HEARING.

3          MR. SIMEON:  THE GOVERNMENT AGREES, YOUR HONOR.

4        AND JUST SO THE COURT IS AWARE, THERE WERE A FEW

5     RESTITUTION REQUESTS THAT WERE VAGUE AND, QUITE FRANKLY, IT WAS

6     DIFFICULT FOR US TO FIGURE OUT HOW MUCH -- WHERE THE COSTS WERE

7     THAT WERE INCURRED AND HOW MUCH THE RESTITUTION SHOULD BE.

8        I BELIEVE THAT WE'LL BE ABLE TO REACH AN AGREEMENT, AND IF

9     WE CAN DO THAT PRIOR TO THE STATUS CONFERENCE THAT WE SET, THEN

10    WE CAN REQUEST THAT BE TAKEN OFF CALENDAR.

11         THE COURT:  OKAY.  AND YOU'LL CONTACT -- THERE ARE

12    CERTAIN VICTIMS WHO HAD VERY COMPELLING LETTERS, BUT DIDN'T

13    REQUEST A SPECIFIC AMOUNT.  IS YOUR VICTIM WITNESS COORDINATOR

14    GOING TO GO BACK AND CONTACT PEOPLE AND ASK THEM SPECIFICALLY

15    WHAT THEY'RE REQUESTING?

16         MR. SIMEON:  THAT IS THE FOLLOW-UP, YOUR HONOR,

17    THAT'S CORRECT.

18         THE COURT:  OKAY.

19         MR. SIMEON:  SO INDIVIDUALS WHO INDICATED THAT THEY

20    WERE REQUESTING RESTITUTION, BUT DID NOT SPECIFY AN AMOUNT, THE

21    OFFICE IS FOLLOWING UP WITH.

22         THE COURT:  OKAY.  SO WHAT DATE DID YOU WANT FOR THE

23    STATUS?

24         MR. GANTAR:  MY SCHEDULE IS PERSONALLY WIDE OPEN IN

25    FEBRUARY, SO WHATEVER WORKS BEST FOR THE COURT AND THE

```
 1        GOVERNMENT.  I WOULD SUGGEST THE 12TH.

 2                MR. SIMEON:  THE 12TH WOULD BE PERFECT.

 3                THE COURT:  DOES THAT GIVE YOU ENOUGH TIME?

 4        OFFICER MAR, DOES THAT WORK FOR YOU?

 5                OFFICER MAR:  YES, IT DOES.

 6                THE COURT:  DOES THAT WORK FOR US?

 7                THE CLERK:  YES, IT DOES, YOUR HONOR.

 8                THE COURT:  OKAY.  SO LET'S HAVE THAT BE A

 9        RESTITUTION STATUS CONFERENCE ON FEBRUARY 12TH OF 2020.

10           NOW, THE STATUTE ENVISIONS THAT WE WOULD RESOLVE

11        RESTITUTION WITHIN 90 DAYS, SO WOULD YOU PLEASE BE PREPARED TO

12        HAVE THE HEARING BY -- I MEAN, MAYBE WE SHOULD GO AHEAD AND

13        SCHEDULE IT MARCH 11TH.

14                MR. SIMEON:  SO I'M SCHEDULED TO BE IN TRIAL THEN,

15        YOUR HONOR.

16                THE COURT:  OH.

17                MR. SIMEON:  SO I THINK -- ONE SECOND, PLEASE, YOUR

18        HONOR.

19           (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

20                MR. SIMEON:  YOUR HONOR, I THINK WE'LL KNOW BY THE

21        12TH WHETHER WE NEED TO HEARING ON NOT.  WOULD IT BE POSSIBLE

22        TO JUST SET IT FOR THE FOLLOWING WEEK, THE FOLLOWING WEDNESDAY?

23                THE COURT:  I WOULD KIND OF NEED TO RESERVE THE DATE.

24        LET ME SEE.  HOW DOES THE 19TH LOOK FOR US?

25                THE CLERK:  YOUR HONOR, YOU MAY BE UNAVAILABLE THAT
```

 1       DAY.

 2           BUT THE 26TH WORKS.  IS THAT TOO LATE?

 3               MR. SIMEON:  I --

 4               THE COURT:  BECAUSE I WOULD LIKE THIS WELL BRIEFED.

 5       OKAY?  IF YOU CAN'T REACH AN AGREEMENT BY THE 12TH, I WANT IT

 6       WELL BRIEFED.  I DON'T WANT SOMETHING HALF COOKED AND THEN

 7       HAVING TO SORT THIS THROUGH UNPLEASANTANTLY THROUGH A HEARING.

 8           I WOULD WANT GOOD BRIEFING IN ADVANCE, TEEING UP EXACTLY

 9       WHERE EVERYONE AGREES, WHERE THERE'S DISAGREEMENT, WHAT

10       EVERYONE'S RESPECTIVE POSITIONS ARE ON AREAS OF DISAGREEMENT.

11           I WANT THIS WELL BRIEFED.  SO WHEN CAN YOU DO THAT?

12               MR. SIMEON:  AND HOW FAR IN ADVANCE OF THE HEARING

13       WOULD YOU LIKE THAT BRIEFING, YOUR HONOR?

14               THE COURT:  A MINIMUM OF A WEEK.

15           (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

16               MR. SIMEON:  YOUR HONOR, IF THE COURT IS AVAILABLE

17       FEBRUARY 26TH, WE CAN MAKE THAT WORK.

18               THE COURT:  MS. DIBBLE, YOU SAID THAT WAS OKAY;

19       RIGHT?

20               THE CLERK:  WE DO HAVE ONE SENTENCING THAT DAY THAT

21       WAS JUST SET --

22               MR. SIMEON:  I WILL BE HERE.

23               THE CLERK:  -- EARLIER THIS MORNING.

24               THE COURT:  OKAY.  WELL, HOPEFULLY WE WON'T EVEN NEED

25       TO HAVE ONE.  BUT THIS WAY WE CAN RESERVE IT IN CASE YOU NEED

1    IT.

2              MR. SIMEON:  YES, YOUR HONOR.

3              THE COURT:  OKAY.  SO THE RESTITUTION STATUS

4    CONFERENCE WILL BE FEBRUARY 12TH; THE RESTITUTION HEARING WILL

5    BE FEBRUARY 26TH.

6         NOW, WHEN ARE YOU -- WELL, I GUESS THE 12TH I WON'T HAVE

7    TO MAKE ANY DECISIONS.  THE 12TH IT'LL EITHER BE A STIPULATION

8    OR IT'LL BE JUST A CONFIRMATION THAT WE NEED TO HAVE THE

9    HEARING ON THE 26TH.  OKAY.  THAT'S FINE.

10        BUT AS FAR AS ANY DOCUMENTATION NEEDED FOR AN ACTUAL

11   HEARING, THE DEADLINE TO FILE THAT IS FEBRUARY 12TH --

12   FEBRUARY 19TH.

13        AND I DON'T WANT THAT TO BE MULTIPLE SHIPS PASSING IN THE

14   NIGHT.  I WANT YOU TO MEET AND CONFER IN ADVANCE AND HAVE VERY

15   FOCUSSED -- BECAUSE OFTEN PEOPLE JUST TALK PAST EACH OTHER AND

16   IT'S JUST TOTALLY UNHELPFUL.  SO I WANT YOU TO MEET AND CONFER

17   IN ADVANCE AND REALLY FIGURE OUT -- I'D PREFER IT ALMOST TO BE

18   A JOINT DOCUMENT THAT SAYS, OKAY, FOR THIS PARTICULAR VICTIM,

19   THEY'RE REQUESTING THIS, THIS IS THE GOVERNMENT'S POSITION,

20   THIS IS THE DEFENDANT'S POSITION, THIS IS PROBATION'S POSITION.

21        THAT WOULD BE THE MOST HELPFUL TO ME THAN SORT OF LIKE

22   NON-OVERLAPPING ARGUMENTS AS TO SPECIFIC REQUESTS.

23             CAN YOU DO THAT?  CAN THAT BE A JOINT MEMO?

24             MR. SIMEON:  YES, YOUR HONOR, WE CAN DO THAT.

25             THE COURT:  OKAY.  AND INCLUDE PROBATION, PLEASE.

1    JUST LAY THAT OUT, PER VICTIM, WHAT EVERYONE'S VIEWS ARE, WHAT

2    THE AREAS OF DISPUTE AND AREAS OF AGREEMENT ARE.   THANK YOU.

3         OKAY.   SO THAT IS RESTITUTION.

4         LET ME ASK -- AND THIS IS REALLY A QUESTION FOR JOINT

5    RESTITUTION AS WELL -- I -- FOR SOME OF THESE VICTIMS, IT

6    SOUNDS LIKE THEIR ATTORNEYS HAVE GOTTEN EXPERT OPINIONS ON ALL

7    OF THE MEDICAL TREATMENT THAT'S NECESSARY TO DEAL WITH THE

8    SEXUAL ABUSE THAT HAPPENED TO THEM.

9         BUT ARE THEY GETTING, LIKE, MULTIPLE RECOVERIES ALL OVER

10   THE COUNTRY?   BECAUSE THEY'RE SAYING, LIKE, MANY PEOPLE ARE

11   DOWNLOADING THIS, VIEWING THIS, THEY'RE VICTIMIZED, TRAUMATIZED

12   EVERY SINGLE TIME.

13        BUT HOW ARE YOU ALL KEEPING TRACK OF MULTIPLE RECOVERIES

14   OR JOINT AND SEVERAL LIABILITY?   HOW DOES THAT WORK?

15             MR. SIMEON:   YES.   I DON'T HAVE A FULL ANSWER TO

16   THAT, YOUR HONOR.

17        BUT IT IS TRUE AND CORRECT THAT THEY ARE NOT VICTIMS ONLY

18   IN THIS ONE CASE, AND SO THAT IS SOMETHING THAT WE HAVE TO WORK

19   OUT AND FIGURE OUT HOW MUCH IS APPROPRIATE IN ANY ONE SPECIFIC

20   DEFENDANT'S CASE.

21             THE COURT:   OKAY.

22             MR. SIMEON:   BUT I, FRANKLY, AM STILL WORKING THROUGH

23   THAT PROCESS.   I DON'T HAVE A GOOD ANSWER FOR THE COURT TODAY

24   ON HOW TO FIGURE THAT OUT.

25             THE COURT:   OKAY.   ALL RIGHT.

1          WHAT WAS -- THERE IS A TWO LEVEL -- OR FOUR LEVEL, PARDON

2     ME -- INCREASE FOR SEXUAL ABUSE OF INFANTS OR TODDLERS.

3          WHAT WAS THE PORNOGRAPHY AS RELATES TO INFANTS AND

4     TODDLERS IN MR. WELLS'S POSSESSION?

5               MR. SIMEON:  THERE WAS A VARIETY, YOUR HONOR,

6      INCLUDING ORAL AND ANAL RAPE OF INDIVIDUALS WHO WERE MONTHS

7      OLD.  I THINK FOUR MONTHS OLD WAS THE YOUNGEST IF I RECALL

8      CORRECTLY.

9          BUT THERE WERE MULTIPLE C.P. IMAGES AND VIDEOS OF, AGAIN,

10     INFANTS AND TODDLERS WHO WERE UNDER ONE YEAR OF AGE.

11          (PAUSE IN PROCEEDINGS.)

12               THE COURT:  LET ME HEAR FROM OFFICER MAR.  HOW DID

13     YOU COME TO YOUR RECOMMENDATION OF 5 YEARS AND 11 MONTHS?

14               OFFICER MAR:  YOUR HONOR, I JUST TOOK INTO

15     CONSIDERATION THE SENTENCING DISPARITY AMONG SIMILARLY SITUATED

16     DEFENDANTS --

17               THE COURT:  UM-HUM.

18               OFFICER MAR:  -- AND PREVIOUS CASES IN OTHER

19     COURTROOMS --

20               THE COURT:  UM-HUM.

21               OFFICER MAR:  -- IN WHICH --

22               THE COURT:  NOW, ARE YOU ONLY LOOKING AT SAN JOSE?

23               OFFICER MAR:  NO.

24               THE COURT:  ARE YOU LOOKING AT NORTHERN DISTRICT OF

25     CALIFORNIA?  ARE YOU LOOKING AT ALL OF CALIFORNIA, ALL OF THE

1    UNITED STATES?

2              OFFICER MAR:  NORTHERN DISTRICT.

3              THE COURT:  OKAY.

4              OFFICER MAR:  AND BASED ON MY EXPERIENCE ON THESE

5    CASES IN DIFFERENT COURTROOMS, THERE HAS BEEN A LOT OF

6    DISAGREEMENT OVER THE GUIDELINES IN REGARDS TO THE CHILD

7    PORNOGRAPHY CASES.

8              THE COURT:  UM-HUM.

9              OFFICER MAR:  SO I -- AND I'VE BEEN IN CASES WHERE

10   THE JUDGES HAVE DISMISSED THE TWO LEVEL ENHANCEMENT FOR A USE

11   OF A COMPUTER BECAUSE MOST OF THESE CASES USE A COMPUTER THESE

12   DAYS.

13             THE COURT:  UM-HUM.

14             OFFICER MAR:  AND ALSO THE NUMBER OF IMAGES THAT

15   AMASS THAT.

16             THE COURT:  OKAY.  UM-HUM.

17             OFFICER MAR:  SO I TOOK AWAY THE SEVEN LEVEL INCREASE

18   AND CAME UP TO THE GUIDELINE RANGE OF -- THE TOTAL OFFENSE

19   LEVEL OF 25.

20             THE COURT:  I SEE.

21          NOW, IN THE PAST, I'VE NEVER SEEN SO MANY VICTIM IMPACT

22   STATEMENTS.

23             OFFICER MAR:  YEAH.

24             THE COURT:  THAT'S NEW.  I THINK SINCE THE SUPREME

25   COURT ALLOWED MORE RESTITUTION MORE EASILY IN THESE TYPES OF

1    CASES, A LOT OF LAWYERS HAVE BECOME INVOLVED AND HAVE STARTED

2    TO DOCUMENT THIS.

3              OFFICER MAR:  YES.

4              THE COURT:  I'M WONDERING IF A LOT OF YOUR HISTORICAL

5    INFORMATION IS BEFORE WE HEARD FROM SO MANY VICTIMS.  IS THAT

6    RIGHT?  BECAUSE, I MEAN, WE USED TO GET NOTHING.  WE USED TO

7    HEAR NOTHING FROM VICTIMS.

8              OFFICER MAR:  RIGHT.

9              THE COURT:  OR, LIKE, MAYBE ONE OR TWO IN THE LAST

10   FEW YEARS.  BUT NEVER ANYTHING LIKE THIS.

11             OFFICER MAR:  RIGHT.  I WOULD SAY IN THE LAST FEW

12   YEARS, THE VICTIM IMPACT STATEMENTS HAVE CHANGED TO ADDRESS THE

13   DEFENDANT INDIVIDUALLY --

14             THE COURT:  UM-HUM.

15             OFFICER MAR:  -- VERSUS THE ORIGINAL PERPETRATOR.

16        SOMETIMES THEY'RE OUTDATED VICTIM IMPACT STATEMENTS.

17             THE COURT:  UM-HUM.

18             OFFICER MAR:  SO A LOT OF THOSE STATEMENTS USED TO

19   ADDRESS THE ABUSE FROM THE --

20             THE COURT:  PERSON WHO ACTUALLY CREATED THE CHILD

21   PORNOGRAPHY?

22             OFFICER MAR:  RIGHT, CORRECT.  SO THEY'VE CHANGED

23   OVER THE YEARS IN WHICH RESTITUTION HAS BEEN AWARDED BASED ON

24   THE INDIVIDUAL DEFENDANT AND THE HARM IT CAUSED THE VICTIM.

25             THE COURT:  UM-HUM.  OKAY.

1    ALL RIGHT.  WELL, I WILL TELL YOU, MY -- MY TENTATIVE IS

2    72 MONTHS, SO IT'S ONE MONTH MORE THAN WHAT PROBATION REQUESTS.

3    IT'S A YEAR BEYOND THE MANDATORY MINIMUM OF FIVE YEARS.

4    IT'S A LARGE DOWNWARD VARIANCE.  I WOULDN'T MAKE THE

5    DECISION BASED ON POLICY DISAGREEMENT WITH THE SENTENCING

6    GUIDELINES.

7    BUT I AM ALSO CONCERNED ABOUT UNWARRANTED SENTENCING

8    DISPARITIES AMONGST HOW OTHER JUDGES ARE SENTENCING THESE CHILD

9    PORNOGRAPHY CASES.

10   BUT I THINK THAT THIS IS BEYOND THE MANDATORY MINIMUM,

11   WHICH IS WHAT THE DEFENSE HAS REQUESTED.  THEY'VE REQUESTED THE

12   STRAIGHT 60 MONTHS, WHICH IS THE MANDATORY MINIMUM PROVIDED BY

13   STATUTE.

14   I -- ANYWAY, I'LL GO THROUGH ALL THE 3553 FACTORS LATER.

15   I DON'T WANT TO REPEAT MYSELF.

16   BUT THAT'S MY TENTATIVE.  IF ANYONE WANTS TO BE HEARD, I

17   WOULD LOVE TO HEAR FROM YOU.  SO --

18   MR. SIMEON:  JUST BRIEFLY, YOUR HONOR.

19   THE COURT:  UM-HUM.

20   MR. SIMEON:  I KNOW THE COURT HAS ALREADY ADDRESSED

21   THE POLICY ISSUE.

22   I BELIEVE THE NUMBER THAT DEFENSE COUNSEL CITED IN HIS

23   BRIEF WAS THAT 61 PERCENT OF THE SENTENCES ARE BELOW THE

24   GUIDELINES.

25   BUT THAT MEANS THAT 39 PERCENT OR SO WERE WITHIN THE

1    GUIDELINES AS WELL.

2              THE COURT:  UM-HUM.

3              MR. SIMEON:  AND THE ARGUMENT THAT HE FOCUSES ON, OF

4    COURSE, IS THE EFFECT ON THE DEFENDANT, THE SENTENCING, AND THE

5    COLLATERAL EFFECTS AND THE OTHER MITIGATING FACTORS.

6              THE COURT:  UM-HUM.

7              MR. SIMEON:  IN THE SENATE REPORT AND THE COURTS THAT

8    HAVE GIVEN MORE SEVERE SENTENCES, THEIR FOCUS IS ON THE

9    VICTIMS.

10             AND, AGAIN, AS OFFICER MAR JUST POINTED OUT, THERE IS A

11   DISTINCTION BETWEEN THE ORIGINAL ABUSE AND THEN THE REPEATED

12   VICTIMIZATION OF THOSE INDIVIDUALS BY THE PROLIFERATION AND THE

13   SHARING OF THE CHILD PORNOGRAPHY IMAGES.

14             MR. WELLS USED A PEER-TO-PEER FILE SHARING NETWORK, AND SO

15   HE WAS NOT CHARGED WITH DISTRIBUTION AND THE GUIDELINES DO NOT

16   INCLUDE DISTRIBUTION.

17             BUT DURING THE INITIAL INVESTIGATION, THE INVESTIGATOR WAS

18   ABLE TO DOWNLOAD FILES THAT MR. WELLS HAD AVAILABLE THROUGH

19   THAT NETWORK BECAUSE, OF COURSE, A FILE SHARING NETWORK IS

20   DESIGNED TO SHARE FILES, TO RECEIVE FILES AND TO DISTRIBUTE

21   THEM.

22             AND SO WHAT THE SENATE HAS STATED AND WHAT OTHER COURTS,

23   INCLUDING THE SUPREME COURT, HAVE STATED IS THAT THESE INTERNET

24   IMAGES AND THE DISTRIBUTION AND SHARING OF THEM CREATES A

25   PERMANENT RECORD WHERE CHILD SEXUAL ABUSE VICTIMS ARE

1  CONTINUOUSLY REVICTIMIZED, AND THE REASON THAT HAPPENS IS

2  BECAUSE OF THE DEMAND FOR THESE IMAGES.

3      AND BECAUSE THIS DEMAND IS INCESSANT, NEW VICTIMS ARE

4  CREATED ALL THE TIME, AND THEIR IMAGES WILL NEVER DISAPPEAR

5  FROM THE INTERNET.

6      AND SO I UNDERSTAND THAT THERE IS QUITE A DEBATE AND

7  COURTS DISAGREE ON THE GUIDELINES FOR THESE C.P. OFFENSES.

8      BUT IT REALLY JUST DEPENDS WHERE ONE PUTS MORE WEIGHT,

9  WHETHER IT'S THE FOCUS ON THE DEFENDANT OR ON ALL OF THE

10  VICTIMS.

11      AND THE NUMBERS HERE ARE STAGGERING, AND IN PART, THE

12  SPECIFIC OFFENSE CHARACTERISTICS FOR USE OF A COMPUTER AND THE

13  INTERNET APPLY BECAUSE IT MAKES IT SO EASY TO INCREASE THE

14  NUMBER OF VICTIMS AND TO CONTINUE TO KEEP THOSE VICTIMS

15  ACCESSIBLE AND THEIR IMAGES ACCESSIBLE TO USERS AND PEOPLE

16  USING THESE FILE SHARING NETWORKS ALL OVER THE WORLD.

17      SO I APPRECIATE THAT THERE ARE SOME MITIGATING FACTORS IN

18  THIS CASE.  DEFENSE COUNSEL HAS LAID THEM OUT ABLY SO.  I WILL

19  LEAVE THAT TO HIM TO ADDRESS.

20      THANK YOU, YOUR HONOR.

21          THE COURT:  ALL RIGHT.  NOW, YOUR RECOMMENDATION OF

22  121 MONTHS, WHY DON'T YOU EXPLAIN WHY YOU DON'T THINK ANY

23  VARIANCE IS APPROPRIATE.

24          MR. SIMEON:  AS I MENTIONED, YOUR HONOR, THERE ARE

25  SOME MITIGATING FACTORS.  121 IS WITHIN THE GUIDELINES.

1    HOWEVER, HAVING READ MANY P.S.R.'S, I DON'T BELIEVE THAT

2    THE MITIGATING FACTORS IN THIS CASE ARE SIGNIFICANT COMPARED TO

3    WHAT I'VE SEEN FROM SOME OTHER DEFENDANTS.  HE HAS SOME FAMILY

4    TIES AND THERE WAS ALLEGEDLY AN ABUSIVE INCIDENT THAT HE

5    SUFFERED WHEN HE WAS A CHILD.

6    BUT OTHERWISE HE'S HAD AN EDUCATION, HE'S BEEN EMPLOYED.

7    THE P.S.R. NOTES HE COMES FROM AN OTHERWISE STABLE AND LOVING

8    FAMILY.

9    THERE, FRANKLY, ARE NOT MANY SIGNIFICANT MITIGATING

10   FACTORS COMPARED WITH OTHER DEFENDANTS I'VE SEEN.

11   AND AS I POINTED OUT, THERE IS A POTENTIAL FOR AN OFFENSE

12   LEVEL INCREASE FOR DISTRIBUTION, WHICH IS NOT TAKEN INTO

13   ACCOUNT IN THIS CASE.

14   SO CONSIDERING THE NUMBER OF VICTIMS -- AND I POINTED OUT

15   THAT THE NUMBER OF VICTIMS I THINK IS 13-FOLD THE NUMBER

16   REQUIRED FOR THE MAXIMUM INCREASE BASED ON THE NUMBER OF C.P.

17   IMAGES POSSESSED OR RECEIVED -- THAT INCREASE IS SO FAR ABOVE

18   THE HIGHEST INCREASE, THE NUMBER REQUIRED FOR THE HIGHEST

19   INCREASE, THE GUIDELINES NOTE THAT THAT CAN JUSTIFY AN UPWARD

20   VARIANCE.

21   SO I RECOGNIZE THAT THERE ARE MITIGATING FACTORS, BUT I

22   DON'T BELIEVE THAT THE MITIGATING FACTORS ARE SO SIGNIFICANT TO

23   COUNTERACT THOSE AGGRAVATING FACTORS.

24   THE COURT:  UM-HUM.

25   LET ME HEAR FROM DEFENSE COUNSEL.  I WOULD ACTUALLY AGREE

1    WITH MR. SIMEON.  YOU KNOW, MR. WELLS HAS LIVED RENT-FREE ALL

2    BY HIMSELF IN A FOUR BEDROOM HOUSE THAT HIS MOM OWNS.  HIS MOM

3    FINANCIALLY SUPPORTS HIM.  HE, YOU KNOW, GREW UP WITH A LOT OF

4    ADVANTAGES HERE.  HE HAS A COLLEGE EDUCATION.

5         YOU KNOW, WHEN I WAS READING HIS P.S.R., I JUST FOUND HIM

6    GRASPING TRYING TO COME UP WITH -- I MEAN, SOME OF THE THINGS

7    WERE, "I SOMETIMES GET SINUS INFECTIONS."  I MEAN, DON'T WE

8    ALL?

9         I MEAN, I WAS READING THROUGH A LOT OF THIS AND THINKING,

10   "OKAY, I HAD PSORIASIS IN THE MID-1980S.  I MIGHT BE --" I

11   MEAN, JUST SOME OF THIS I JUST THOUGHT -- YOU KNOW, "I'M

12   ALLERGIC TO PEANUTS."  LIKE, OH, MY GOODNESS.  NOW AN ALLERGY

13   TO PEANUTS IS NOW A MITIGATING FACTOR THAT TAKES YOU OUTSIDE

14   THE -- I MEAN, I WAS JUST LOOKING THROUGH THIS AND I JUST FELT

15   THAT THERE WAS A LITTLE BIT OF STRETCHING HERE TRYING TO --

16   TRYING TO FIND MITIGATION.

17        I MEAN, I -- I'LL JUST READ -- I'LL JUST -- OKAY.  I WON'T

18   BELABOR THE POINT.

19        BUT, "OH, MY FATHER WAS EMOTIONALLY DISTANT."  LIKE,

20   REALLY?  WITH ALL THE P.S.R.'S WE SEE HERE OF PEOPLE BEING BORN

21   ADDICTED TO HEROIN AND THEIR MOMS ARE PROSTITUTES AND BOTH

22   PARENTS ARE ADDICTED TO METH, I MEAN, JUST SEEING -- I JUST --

23   I JUST FELT LIKE THIS WAS OTHERWISE A PRIVILEGED INDIVIDUAL

24   LIVING RENT-FREE IN A FOUR BEDROOM HOUSE FOR 19 YEARS.  HIS MOM

25   FINANCIALLY SUPPORTS HIM.

1      HE DID HAVE THAT ONE INCIDENT IN SECOND GRADE, WHICH I

2   THINK IS TERRIBLE.

3      BUT IS THIS REALLY JUST COMING DOWN TO SENTENCING

4   DISPARITIES?  I DON'T REALLY SEE ANYTHING ABOUT MR. WELLS THAT

5   TAKES HIM OUTSIDE THE HEARTLAND.  MOST CHILD PORNOGRAPHY

6   DEFENDANTS ARE USUALLY EDUCATED, ARE USUALLY FINANCIALLY

7   SECURE.  I'M NOT SEEING A LOT HERE THAT DISTINGUISHES MR. WELLS

8   FROM ANY OTHER CHILD PORNOGRAPHY DEFENDANT.

9      THIS IS NOT OUTSIDE THE HEARTLAND OF WHAT WE SEE IN REALLY

10  ANY RESPECT FROM WHAT I CAN TELL.  MOST OF THEM DO EITHER LIVE

11  WITH THEIR PARENTS OR -- YOU KNOW, USUALLY LIVE WITH THEIR

12  PARENTS OR LIVE IN HOMES PROVIDED BY THEIR PARENTS.

13      I MEAN, I JUST SEE A LOT OF SIMILARITIES HERE IN CHILD

14  PORNOGRAPHY CASES, SO I'M JUST NOT SEEING WHAT DISTINGUISHES

15  THIS FROM THE HEARTLAND OF CHILD PORNOGRAPHY CASES.

16      WHAT'S YOUR -- THEY ALL DON'T HAVE CRIMINAL HISTORIES.

17      I MEAN, I JUST DON'T SEE ANYTHING THAT IS DIFFERENT.

18      AND, YOU KNOW, SEASONAL ALLERGIES, PEANUT ALLERGIES, I'M

19  JUST -- YOU KNOW, WITH ALL THE HEALTH ISSUES WE SEE OF OUR

20  DEFENDANTS IN CRIMINAL CASES, I JUST DON'T SEE THIS TAKING THIS

21  CASE OUT OF THE HEARTLAND OF CRIMINAL CASES.

22      DO YOU WANT TO RESPOND TO THAT?

23          MR. GANTAR:  ABSOLUTELY, YOUR HONOR.  THANK YOU.

24      AND WE ARE, OF COURSE, MAINTAINING THAT A 60 MONTH

25  SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, UNDER

1    SECTION 3553(A).

2         I THINK, FIRST OF ALL, WITH RESPECT TO THE COURT'S

3    INDICATION THAT -- WELL, WITH RESPECT TO MR. WELLS'S MEDICAL

4    HISTORY AND HIS HEALTH, I WANT TO BE VERY CLEAR.  WE'RE NOT

5    ASKING OR SUGGESTING THAT A DOWNWARD VARIANCE IS APPROPRIATE

6    BECAUSE HE'S ALLERGIC TO PEANUTS OR BECAUSE HE HAD PSORIASIS.

7              THE COURT:  SO WHAT ARE YOU SAYING?  BASED ON WHAT?

8    HE LIVES RENT-FREE.  HIS MOM FINANCIALLY SUPPORTS HIM.  WHAT

9    TAKES HIM OUTSIDE THE HEARTLAND?

10             MR. GANTAR:  WELL, I THINK FIRST AND FOREMOST -- AND

11   BECAUSE WE DEDICATED A LOT OF OUR BRIEFING TO THE GUIDELINES

12   AND THE FACT THAT DISTRICT COURTS ALL AROUND THE COUNTRY, THE

13   NINTH CIRCUIT, THE UNITED STATES SENTENCING COMMISSION ITSELF

14   HAS COME FORWARD AND SAID THESE GUIDELINES DON'T REALLY MAKE A

15   WHOLE LOT OF SENSE, AND IN THIS PARTICULAR CASE, THERE'S A 13

16   POINT UP SWING FROM THE BASE OFFENSE LEVEL BASED ON THOSE

17   GUIDELINES, THOSE SAME GUIDELINES THAT APPLY TO VIRTUALLY EVERY

18   SINGLE CHILD PORNOGRAPHY CASE.

19             THE COURT:  OKAY.  SO YOU HAVE NO ARGUMENT OTHER THAN

20   JUST THE GUIDELINES FOR CHILD PORN ARE TOO HIGH, AND AVOID

21   SENTENCING DISPARITY.

22        AND THAT'S OKAY IF THAT'S YOUR POSITION.

23        I WAS ASKING A DIFFERENT QUESTION.  I UNDERSTAND YOU'RE

24   MAKING THOSE ARGUMENTS.

25        WHAT IS IT ABOUT THIS DEFENDANT THAT TAKES HIM OUTSIDE THE

1     HEARTLAND OF CHILD PORNOGRAPHY CASES?

2          I UNDERSTAND THAT YOU HAVE POLICY DISAGREEMENT WITH THE

3     GUIDELINE RANGE FOR CHILD PORNOGRAPHY CASES.

4          IS THERE ANYTHING SPECIFIC ABOUT MR. WELLS?

5               MR. GANTAR:  THERE ARE, YOUR HONOR.

6               THE COURT:  UM-HUM.

7               MR. GANTAR:  SO ONE POINT IS, AS WE NOTED IN OUR

8     BRIEF, THE FACT THAT HE HAS NO CRIMINAL HISTORY AND HAS

9     OTHERWISE LED A LAW ABIDING LIFE.

10              THE COURT:  OKAY.  BUT WHICH CHILD PORN DEFENDANT HAS

11    A CRIMINAL HISTORY?  I DON'T THINK I'VE SEEN ANY CHILD PORN

12    DEFENDANT WITH A CRIMINAL HISTORY.

13              OFFICER MAR:  IT'S VERY RARE.

14              THE COURT:  IT'S VERY RARE.  THAT'S NOTHING NEW.

15         BUT GO AHEAD.

16              MR. GANTAR:  AND I THINK THE FACT THAT OBVIOUSLY HIS

17    HAVING SUFFERED THAT EVENT OF SEXUAL ABUSE WHEN HE WAS A CHILD.

18         I THINK IT'S ALSO APPROPRIATE FOR THE COURT TO CONSIDER

19    THAT HE HAS ACTED AS SOMEWHAT OF A CARETAKER FOR HIS VERY ILL

20    MOTHER WHO IS, I WILL JUST NOTE FOR THE COURT, HERE PRESENT

21    TODAY AND DOES HAVE A COMMITMENT TO ESSENTIALLY, FROM WHAT I

22    UNDERSTAND, BECOME A PERMANENT CARETAKER FOR HER AFTER HE'S

23    RELEASED FROM HIS CUSTODY.

24              THE COURT:  WELL, HE LIVES IN SOQUEL, DOWN NEAR

25    APTOS, RIGHT?  AND SHE LIVES IN CHICO, WHICH IS A FOUR TO FIVE

1    HOUR DRIVE.  HE HAS NOT CHOSEN, ALL THESE YEARS WHEN HE'S BEEN

2    UNEMPLOYED SINCE 2016, TO GO LIVE WITH HER AND TAKE CARE OF

3    HER.

4              MR. GANTAR:  HE HAS --

5              THE COURT:  SO I DID WONDER, IF HE WAS SO CONCERNED

6    ABOUT HELPING HIS MOM, WHY HASN'T HE DONE IT SINCE HE'S BEEN

7    UNEMPLOYED SINCE SEPTEMBER OF 2016?

8              MR. GANTAR:  I'M HAPPY TO ANSWER THAT, YOUR HONOR.

9              THE COURT:  YEAH.

10             MR. GANTAR:  HE HAS BEEN ON PRETRIAL RELEASE WITH

11   LOCATION MONITORING.  I DON'T BELIEVE HE WOULD BE ABLE TO MAKE

12   IT OUT THERE WITHOUT --

13             THE COURT:  WELL, HE COULD HAVE GOTTEN PERMISSION

14   FROM HIS PROBATION OFFICER.  I WOULD HAVE GIVEN HIM PERMISSION

15   TO TAKE CARE OF HIS MOTHER IF THAT'S WHAT HE WANTED TO DO.

16             MR. GANTAR:  THERE'S NO GUARANTEE THAT HE WOULD HAVE

17   OBTAINED THAT SORT OF PERMISSION FROM HIS PARTICULAR PRETRIAL

18   SERVICES OFFICER.

19             THE COURT:  DID HE EVER ASK?  DID HE EVER ASK?

20             THE DEFENDANT:  YES, I DID.

21             MR. GANTAR:  HE INDICATES THAT HE HAS.

22             THE COURT:  ALL RIGHT.

23             MR. GANTAR:  IN ADDITION, AS WE'VE NOTED -- YOU KNOW,

24   I WON'T GO AHEAD AND REPEAT WHAT WE'VE ALREADY WRITTEN IN OUR

25   BRIEFING, BUT I THINK IT IS A SIGNIFICANT POINT THAT MR. WELLS

1    DID HAVE A CAREER BEFORE THIS, WHICH IS OBVIOUSLY OVER AND

2    WILL -- YOU KNOW, HIS CHANCES AT OBTAINING A COMPARABLE

3    EMPLOYMENT FOLLOWING HIS RELEASE ARE -- WILL BE DIFFICULT TO

4    SAY THE LEAST.

5            THE COURT:  YOU KNOW, LET ME ASK A QUESTION ABOUT

6    THAT.

7            SO IN YOUR SENTENCING MEMO, ON PAGE 3, LINES 8 THROUGH 10,

8    YOU SAY THAT HIS CAREER ABRUPTLY ENDED UPON HIS ARREST FOR THE

9    INSTANT OFFENSE.

10           NOW, FROM WHAT I CAN DISCERN FROM THE P.S.R., THE SEARCH

11   WARRANT WAS EXECUTED AND HE WAS ARRESTED ON APRIL 28TH OF 2016.

12           THE P.S.R. SAYS THAT HE WAS TERMINATED AUGUST OF 2016 AND

13   THAT HE WAS LAID OFF.

14           LET ME ASK OFFICER MAR, DO YOU KNOW, WAS HE LAID OFF?  OR

15   HE WAS TERMINATED BECAUSE OF HIS ARREST FOUR MONTHS EARLIER?

16           OFFICER MAR:  I DO NOT KNOW.

17           THE COURT:  OKAY.  WHO SAID "LAID OFF"?  WHO GAVE YOU

18   THAT LANGUAGE?

19           OFFICER MAR:  THE DEFENDANT.

20           MR. GANTAR:  SO MY UNDERSTANDING IS THAT HIS EMPLOYER

21   AT THAT TIME -- BECAUSE MR. WELLS HAS HAD MANY, THAT'S THE

22   NATURE OF UNION WORK, YOU WORK ONE JOB, YOU'RE LAID OFF, YOU

23   GET ANOTHER ONE THROUGH THE UNION -- HIS EMPLOYER AT THAT TIME,

24   A FEW MONTHS AFTER THIS HAD HAPPENED, LEARNED OF THE ARREST

25   THROUGH I GUESS THE MEDIA OR THE NEWSPAPER -- IT IS A VERY

1    SMALL COMMUNITY WHERE MR. WELLS LIVES -- AND FOR THAT REASON HE

2    WAS TERMINATED FROM THE POSITION.

3         THAT'S MY UNDERSTANDING.

4         THE COURT:  WHY DID HE SAY "LAID OFF" INSTEAD OF

5    "TERMINATED"?

6         THE DEFENDANT:  THEY LAID ME OFF BECAUSE OF THE FACT

7    THAT WAY I COULD COLLECT UNEMPLOYMENT.

8         THE COURT:  I SEE.

9         ALL RIGHT.  GO AHEAD, PLEASE.

10        MR. GANTAR:  AND, AGAIN, I DON'T MEAN TO BELABOR THE

11   POINT, YOUR HONOR, BUT THE INFORMATION IN THE P.S.R. REGARDING

12   HIS HEALTH HISTORY AND HIS UPBRINGING, THOSE ARE JUST SPECIFIC

13   ANSWERS MR. WELLS GAVE AS PART OF THAT PRESENTENCE INTERVIEW.

14   THOSE ARE VERY SPECIFIC QUESTIONS THAT ARE ALWAYS ASKED OF

15   DEFENDANTS.  DEFENDANTS ARE ASKED TO BE VERY SPECIFIC ABOUT

16   THEIR HEALTH HISTORY.

17        AND I THINK THIS IS PRIMARILY MORE SO FOR THE B.O.P. THAN

18   IT IS FOR A DISTRICT COURT TO IMPOSE THAT SENTENCE.

19        SO I JUST WANT TO MAKE CLEAR WHY THAT INFORMATION IS EVEN

20   INCLUDED IN THE FIRST PLACE.

21        I WOULD ALSO LIKE TO -- I WON'T ADDRESS THE INFLATION OF

22   THE GUIDELINES ANYMORE BECAUSE I THINK I'VE DONE THAT ENOUGH IN

23   THE BRIEFING.

24        BUT I WILL ALSO TOUCH UPON THE DISPARITY.  THERE ARE

25   SEVERAL CASES THAT WE CITED IN OUR BRIEF THAT ARISE OUT OF THE

1    NORTHERN DISTRICT OF CALIFORNIA PARTICULARLY, AND THOSE ARE

2    CASES THAT, IN MY UNDERSTANDING --

3              THE COURT:  YOU KNOW WHAT?  I DON'T EVEN WANT YOU TO

4    WASTE TIME ON THAT.  I DID READ IT.  YOU DIDN'T GIVE ME THE

5    P.S.R.'S.  YOU DIDN'T GIVE ME THE SENTENCING MEMOS.  I HAVE NO

6    IDEA WHAT OFFENSE THEY WERE CONVICTED OF, WHAT THEIR GUIDELINE

7    RANGE WAS, WHAT THEIR CRIMINAL HISTORY WAS, WHAT THEIR 18

8    U.S.C. 3553 FACTORS WERE.

9         SO JUST GIVING ME A CASE NUMBER AND A CASE NAME AND THE

10   SENTENCE, I JUST DON'T FIND THAT TO BE THAT PERSUASIVE UNLESS

11   YOU GIVE ME ALL OF THE FACTS AND THEN I CAN SEE WHAT ALL OF THE

12   18 U.S.C. SECTION 3553 FACTORS WERE AND HOW THEY WERE

13   ULTIMATELY CONSIDERED.

14             MR. GANTAR:  I'M HAPPY TO MAKE SOME REPRESENTATIONS

15   NOW IF THE COURT WOULD LIKE TO HEAR THEM.  BUT I APOLOGIZE TO

16   THE COURT FOR NOT INCLUDING WHAT WAS, YOU KNOW, VERY USEFUL

17   INFORMATION.

18        WELL, IF THE COURT WOULD PERMIT, I'LL GO AHEAD AND JUST

19   NOTE THAT, FOR EXAMPLE, THE OROBCHENKO CASE, THAT WAS A

20   DISTRIBUTION OFFENSE WITH A FIVE YEAR MANDATORY MINIMUM WHERE

21   THE GUIDELINES ADVISED A 97 MONTH SENTENCE.

22        THAT INDIVIDUAL WAS SENTENCED TO 60 MONTHS.

23             THE COURT:  OKAY.  SO THEY WENT FROM 97 TO 60.

24        AND WE'RE TALKING ABOUT 121 GOING TO 72.

25        SO THAT WAS A 37 MONTH GAP.  AND WHAT IS IT HERE?

1    OFFICER MAR:  YOUR HONOR, I JUST WANT TO POINT OUT

2    THAT I DID WRITE THAT P.S.R. AND I BELIEVE THERE WAS AN

3    11(C)(1)(C) PLEA AGREEMENT IN THAT CASE.

4          THE COURT:  OH, OKAY.  SO IF YOU WANT ME TO FOLLOW

5    THAT CASE, THEN I SHOULD JUST VARY DOWNWARD 37 MONTHS.  THAT

6    WOULD BE THEN AN 84 MONTH SENTENCE.

7          MR. GANTAR:  WELL, THAT'S ASSUMING THAT THE COURT

8    CONSIDERS THESE GUIDELINES AT ALL TO BE APPROPRIATE, WHICH

9    WE'RE ASKING THE COURT TO FIND THAT THEY DON'T APPLY -- OR NOT

10   THAT THEY DON'T APPLY.  THEY DO APPLY.

11         BUT RATHER, TO VARY DOWNWARD SIGNIFICANTLY ON THE BASIS

12   THAT WE'VE OUTLINED IN OUR BRIEF.

13         THE COURT:  I KNOW.  BUT THE CASE YOU JUST CITED WAS

14   A BINDING PLEA AGREEMENT WITH A SENTENCING GUIDELINE RANGE OF

15   97 MONTHS.  IT WAS A VARIANCE OF 37 MONTHS DOWN TO 60 MONTHS.

16         WE'RE TALKING ABOUT A 121 MONTH GUIDELINE RANGE, WHICH I'M

17   SAYING I'M GOING TO VARY 49 MONTHS TO 72 MONTHS.

18         IF YOU WANT ME TO FOLLOW THE CASE THAT YOU CITED, THEN I'M

19   GOING TO SENTENCE TO 84 MONTHS BECAUSE THAT COURT ONLY VARIED

20   37 MONTHS.

21         MR. GANTAR:  WELL, WE'RE NOT ASKING THE COURT TO

22   EXACTLY FOLLOW THE CASE.  WE'RE JUST --

23         THE COURT:  YES, YOU ARE.  YOU'RE SAYING THEY DID A

24   MANDATORY MINIMUM PRISON SENTENCE OF 60 MONTHS, DO THE SAME.

25   IS THAT NOT YOUR ARGUMENT?

1          MR. GANTAR:  WE'RE CITING THESE CASES FOR THE GENERAL

2     PROPOSITION THAT THESE INDIVIDUALS IN THESE SORTS OF CASES DO

3     GET SENTENCED TO THE MANDATORY MINIMUM.

4          AGAIN, WE'RE NOT ASKING THE COURT TO ADOPT THAT EXACT

5     VARIANCE, BECAUSE EVEN IN A CASE LIKE THIS, THERE MIGHT BE SOME

6     DISTINCTIONS AMONGST THEM.

7          BUT, AGAIN, THAT'S OUR POSITION.  WE'RE NOT CITING THOSE

8     CASES SO THAT --

9          THE COURT:  I MEAN, THE GUIDELINE RANGE HERE IS TWO

10     YEARS HIGHER THAN THE CASE JUST CITED TO ME, EXACTLY 24 MONTHS,

11     FROM 121 TO 97 MONTHS.

12          I MEAN, IF YOU WANT TO CITE SOME MORE, LET'S DO IT.  MAYBE

13     OFFICER MAR KNOWS ABOUT IT.  THIS WAS A BINDING PLEA AGREEMENT

14     FOR A 37 MONTH VARIANCE.

15          DO YOU WANT TO CITE ANY MORE?  TELL ME WHAT THE

16     VARIANCE -- WHAT THE -- WHAT WAS THE LOW END GUIDELINE RANGE?

17     WHAT WAS THE NUMBER OF MONTHS VARIED TO GET DOWN TO THE

18     MANDATORY MINIMUM OF 60?

19          MR. GANTAR:  I HAVE NOTHING BEYOND WHAT WAS -- WHAT

20     IS ALREADY IN OUR BRIEF.

21          THE COURT:  SO THOSE OTHER CASES, WAS THEIR GUIDELINE

22     RANGE HIGHER THAN 97 MONTHS OR LOWER?

23          MR. GANTAR:  AGAIN, WE CITED THEM.  SO HENDERSON WAS

24     97 TO 121.  OROBCHENKO WAS 78 TO 97.

25          THE COURT:  OKAY.  SO THEY VARIED 18 MONTHS; RIGHT?

```
1      78 DOWN TO 60 IS AN 18 MONTH VARIANCE.

2                MR. GANTAR:  I BELIEVE THAT MATH IS CORRECT, YES.

3                THE COURT:  ALL RIGHT.  GIVE ME -- GIVE ME THE PAGE

4      NUMBER IN YOUR BRIEF, PLEASE.

5                MR. GANTAR:  IT STARTS ON PAGE 12, YOUR HONOR.

6                THE COURT:  OKAY.  SO LET'S -- IF YOU WANT ME TO

7      FOLLOW IT, I'M GOING TO -- I'M GOING TO TAKE A LOOK AND FOLLOW

8      IT.

9                MR. GANTAR:  AGAIN, YOUR HONOR, WE'RE NOT ASKING --

10               THE COURT:  OKAY.  SO THE THING WITH YOUR SENTENCE --

11     IF I'M LOOKING AT PAGE 12, YOU JUST SAY DOWNWARD VARIANCE,

12     DOWNWARD VARIANCE.  YOU DON'T GIVE ME ANY SPECIFICS.

13          I'M LOOKING AT U.S. VERSUS STEWART, U.S. VERSUS PAULEY.

14          OKAY.  IF I GO DOWN TO -- OKAY.  YEAH, LET'S FIGURE IT

15     OUT.  SO HENDERSON WAS A 37 MONTH VARIANCE.

16          OROBCHENKO, YOU DIDN'T GIVE ME WHAT THE RANGE WAS, BUT

17     YOU'RE TELLING ME IT WAS 78 MONTHS.  IT'S NOT HERE.  YOU JUST

18     SAY DEFENDANT CONVICTED OF DISTRIBUTING/POSSESSING CHILD

19     PORNOGRAPHY, SENTENCED TO 60 MONTHS.

20          THAT DOESN'T GIVE ME THE RANGE.

21               MR. GANTAR:  RIGHT, AND I APOLOGIZE FOR NOT INCLUDING

22     THAT IN THE BRIEF.  AFTER -- MOST RECENTLY, YESTERDAY, I DID

23     THE RESEARCH AND I BELIEVE THAT ADVISED 97 MONTHS FOR A

24     GUIDELINE.  I'M NOT SURE EXACTLY WHAT THE RANGE WAS, HOWEVER.

25               THE COURT:  OKAY.  SO THAT WAS ALSO A 37 MONTH
```

1    VARIANCE.

2         OKAY.  LET'S GO TO U.S. VERSUS KOFF.  THAT WAS 78 MONTHS

3    TO 39 MONTHS.  THAT WAS A LARGER GAP.

4         HOW COME THAT DIDN'T HAVE THE STATUTORY MANDATORY MINIMUM?

5              MR. GANTAR:  WHICH CASE?

6              THE COURT:  U.S. VERSUS KOFF.

7              MR. GANTAR:  BECAUSE IT WAS A POSSESSION CASE.

8              THE COURT:  OKAY.  THAT'S A 39 MONTH VARIANCE.

9         IF I GO TO 39 MONTHS, THEN I'D BE SENTENCING HIM HIGHER

10   THAN WHAT MY TENTATIVE IS.  RIGHT?  THAT WOULD BE AN 82 MONTH

11   SENTENCE.

12        OKAY.  LET'S GO TO THE NEXT ONE.  THAT'S A 37 MONTH

13   SENTENCE.  IF I SENTENCE ACCORDING TO THAT VARIANCE, IT'S AN 84

14   MONTH SENTENCE.

15        I MEAN -- OKAY.  LET'S GO TO YOUR LAST CASE, U.S. VERSUS

16   VINCENT.  IT WAS A 78 MONTH SENTENCING GUIDELINE RANGE,

17   SENTENCED DOWN TO 36 MONTHS.  THAT'S A 42 MONTH VARIANCE, AND I

18   HAVE SAID MY TENTATIVE WOULD BE A 49 MONTH VARIANCE.

19        I GUESS I -- THAT'S WHY I JUST -- I FIND THIS EXERCISE NOT

20   ALWAYS -- THAT WOULD BE AN 85 MONTH SENTENCE.  SO YOU'D LIKE ME

21   TO SENTENCE HIM TO 85 MONTHS, I WILL DO THAT.

22        BUT I JUST FIND THAT THESE OTHER CASES, WHEN I JUST DON'T

23   KNOW ANYTHING ABOUT THE CIRCUMSTANCES OF THE OFFENSE OR THE

24   CIRCUMSTANCES OF THAT DEFENDANT, I JUST DON'T FIND IN A VACUUM

25   THAT IT'S THAT HELPFUL.

1          MR. GANTAR:  I UNDERSTAND.

2          THE COURT:  LET'S GO TO THE OBJECTIONS.

3      TO BE HONEST, I WAS KIND OF DISAPPOINTED WITH YOUR

4   OBJECTIONS.  LET ME READ THE FIRST ONE.

5          OBJECTION NUMBER 1 -- WELL, LET'S GO THROUGH -- DOES

6   MR. WELLS WISH TO BE HEARD?

7          THE DEFENDANT:  YES, YOUR HONOR, I WOULD LIKE TO BE

8   HEARD.

9          THE COURT:  GO AHEAD, PLEASE.

10          THE DEFENDANT:  YOUR HONOR, I'M DEEPLY SORRY ABOUT

11   THIS.  I UNDERSTAND WHAT I HAVE DONE IS WRONG.  BECAUSE OF

12   THIS, I HAVE LOST MY JOB AND CAREER THAT I ENJOYED VERY MUCH.

13      I HAVE ALSO LOST MANY FRIENDSHIPS, BOTH OUTSIDE OF WORK

14   AND FROM WORK THAT I HAD HAD.

15      I HAVE LOST THE ABILITY TO DO MANY ACTIVITIES AND EVENTS

16   THAT I ENJOY VERY MUCH, SUCH AS TEACHING AND PARTICIPATING IN

17   OUTDOOR LIVING, OUTDOOR SURVIVAL SKILLS, CLIMBING, AMATEUR

18   RADIO, SHOOTING SPORTS, INCLUDING ARCHERY.

19      AS OF THIS TIME, MY BROTHER AND HIS FAMILY HAVE BROKEN OFF

20   CONTACT WITH ME BECAUSE OF THIS, AND I UNDERSTAND --

21          THE COURT:  WELL, YOUR MOM SAID THAT YOU'VE BEEN

22   ESTRANGED FOR TEN YEARS FROM YOUR BROTHER.  SHE DIDN'T SEEM TO

23   THINK IT WAS JUST BECAUSE OF THIS OFFENSE.

24          THE DEFENDANT:  NO.  WE HAD BEEN TALKING PRIOR, BUT

25   NOT -- NOT COMPLETELY ESTRANGED.  I DON'T KNOW WHERE THAT

1    CAME -- HOW THAT CAME AROUND THAT WE WERE ESTRANGED PRIOR TO

2    THAT FOR TEN YEARS.  WE -- WE'D TALK, BUT NOT LIKE EVERY WEEK.

3    WE'D TALK ONCE A MONTH OR EVERY OTHER MONTH OR SO.

4        BUT IT -- THEY HAVE BROKEN -- BASICALLY COMPLETELY HAVE

5    BROKEN OFF CONTACT WITH ME, AND IT HURTS ME.  BUT IT IS

6    UNDERSTANDABLE BECAUSE OF THE LINE OF WORK THAT THEY ARE --

7    THAT MY BROTHER'S FAMILY IS IN.

8        I HAVE BEEN HARASSED AT WORK RIGHT AFTER MY ARREST AND IN

9    MY AREA BECAUSE OF THE CRIME THAT I HAVE BEEN ACCUSED OF.

10       I AM DEEP -- AGAIN, I AM DEEPLY SORRY AND I FEEL THAT I

11   HAVE LEARNED TO APPRECIATE THE LAW THAT I'M -- AS I HAVE -- AND

12   I AM WORKING WITH THE COUNSELOR FROM -- THAT PRETRIAL IS

13   SENDING ME TO.  WE HAVE MADE A LOT OF PROGRESS, AND I AM SORRY

14   THAT I WILL NOT BE ABLE TO WORK WITH HER WHILE IN CONFINEMENT

15   BECAUSE WE HAVE MADE SOME MAJOR PROGRESS WITH THE ISSUES THAT

16   I'M HAVING.

17            THE COURT:  ALL RIGHT.  THANK YOU.

18       I DID READ HIS MOTHER'S LETTER.  DOES SHE WISH TO BE

19   HEARD?

20       (PAUSE IN PROCEEDINGS.)

21            THE DEFENDANT:  MY COUNSEL IS FINDING OUT.

22       (PAUSE IN PROCEEDINGS.)

23       MRS. WELLS:  WHAT AM I SUPPOSED TO SAY?

24       (PAUSE IN PROCEEDINGS.)

25            MRS. WELLS:  I'M GOING TO START CRYING.  NO, I DON'T

1    WANT TO DO IT --

2             MR. GANTAR:  THAT'S FINE.

3             MRS. WELLS:  -- BECAUSE I'LL START CRYING.

4             THE COURT:  ALL RIGHT.  DOES ANYONE ELSE WISH TO BE

5    HEARD?

6             MRS. WELLS:  I WANT TO BE HEARD, BUT I CAN'T COME UP

7    WITH THE WORDS.

8         (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL AND THE

9    WITNESS.)

10            THE COURT:  ALL RIGHT.  ANYONE ELSE WISH TO BE HEARD?

11            MR. GANTAR:  NO, YOUR HONOR.

12            THE COURT:  OKAY.  ALL RIGHT.

13        LET ME GO THROUGH THE OBJECTIONS, BECAUSE I DO HAVE TO

14   RESOLVE THEM.

15        THIS IS OBJECTION NUMBER 1.  "THE DEFENDANT OBJECTS TO THE

16   INCLUSION OF THE VICTIM IMPACT STATEMENTS.  WHILE THE CRIME

17   VICTIMS' RIGHT ACT GIVES VICTIMS THE RIGHT TO BE 'REASONABLY

18   HEARD AT ANY PUBLIC PROCEEDING IN THE DISTRICT COURT INVOLVING

19   SENTENCING,' IT DOES NOT PROVIDE VICTIMS THE RIGHT TO HAVE

20   THEIR STATEMENT INCLUDED IN A DEFENDANT'S PRESENTENCE REPORT,

21   AND SUCH STATEMENTS SHOULD NOT BE INCLUDED, CITING

22   UNITED STATES VERSUS BURKHOLDER, 590 F.3D 1071, NINTH CIRCUIT,

23   2010."

24        LET ME READ WHAT BURKHOLDER HOLDER SAYS.  I'M CITING

25   590 F.3D AT 1075.  QUOTE, "HERE, THE VICTIMS CHOSE TO ASSERT

1    THEIR RIGHT TO BE REASONABLY HEARD BY SUBMITTING WRITTEN

2    STATEMENTS.  THE LETTERS DISCUSSED AT LENGTH THE EFFECTS OF

3    CHILD ABUSE, NOT COMMITTED BY BURKHOLDER, AS WELL AS THE IMPACT

4    OF THE PORNOGRAPHIC IMAGES.  THE DISTRICT COURT CONSIDERED THE

5    LETTERS AND DETERMINED THAT MUCH OF THEIR CONTENT DID NOT

6    RELATE TO BURKHOLDER'S ACTS.  THE COURT THEN STRUCK THE LETTERS

7    FROM THE P.S.R. SO THAT THEY WOULD NOT BE INCLUDED IN THE

8    MATERIALS SENT TO THE BUREAU OF PRISONS.

9         "ON THIS RECORD, WE HOLD THAT THE DISTRICT COURT DID NOT

10   VIOLATE THE RIGHT TO BE REASONABLY HEARD BY STRIKING THE

11   WRITTEN VICTIM IMPACT STATEMENTS FROM THE P.S.R. DURING THE

12   SENTENCING PROCESS AFTER READING AND CONSIDERING THE LETTERS."

13        NOW, I FIND THIS OBJECTION IS DISTINGUISHABLE, BECAUSE AS

14   OFFICER MAR SAID, THE LETTERS ACTUALLY TALK ABOUT HOW PAINFUL

15   IT IS TO KEEP GETTING HUNDREDS AND HUNDREDS OF LETTERS

16   NOTIFYING THAT A NEW PERSON HAS DOWNLOADED AND VIEWED THIS

17   ABUSE.  SO IT ACTUALLY IS FOCUSSED ON THE HARM THAT THE VICTIMS

18   FEEL FROM WHAT THIS DEFENDANT, JONATHAN WELLS, HAS DONE AND NOT

19   SOMEONE FROM EARLIER.

20        NOW, I CAN GO THROUGH -- I MEAN, IT WAS REALLY HARD TO

21   READ 400 PAGES OF THESE LETTERS.  I MEAN, AS MUCH AS IT'S

22   CAUSED PAIN TO MR. WELLS TO BE INDICTED IN THIS CASE, I MEAN,

23   LET'S TALK ABOUT THE HARM IT CAUSES TO THE VICTIMS IN THIS

24   CASE.

25        I MEAN, THERE WERE SO MANY.  I MEAN -- OKAY.  LET'S JUST

1   GIVE SOME OF THESE -- I MEAN, THEY TALK ABOUT HOW THEY'RE SO

2   AFRAID THAT SOMEONE IS GOING TO RECOGNIZE THEM THAT THEY DON'T

3   LIKE TO BE PHOTOGRAPHED AND THEY DON'T WANT ANY IMAGE ON THE

4   INTERNET BECAUSE THEY'RE WORRIED THAT PEOPLE ARE GOING TO

5   RECOGNIZE THEIR FACE; THAT THIS IS SOMETHING THAT GOES WITH

6   THEM THE REST OF THEIR LIVES BECAUSE PEOPLE ARE STILL

7   DOWNLOADING THE IMAGES.

8        AND, YOU KNOW -- OKAY, MAYBE I SHOULD GO THROUGH IT,

9   BECAUSE I THINK IT WOULD BE HELPFUL BECAUSE THERE'S PAIN ON ALL

10  SIDES HERE AND I THINK IT IS WRONG TO SAY WE DON'T WANT ANY OF

11  THAT IN THE P.S.R.  I'M ACTUALLY DISAPPOINTED TO ACTUALLY EVEN

12  READ THAT.

13              MR. GANTAR:  MAY I RESPOND TO THAT, YOUR HONOR --

14              THE COURT:  YEAH, GO AHEAD, PLEASE.

15              MR. GANTAR:  -- JUST TO SORT OF PUT IT INTO CONTEXT?

16              THE COURT:  YES.

17              MR. GANTAR:  WE HAVE ABSOLUTELY NO OBJECTION TO THE

18  COURT READING THOSE.  WE HAVE NO OBJECTION TO THE COURT

19  CONSIDERING THOSE.

20       THE CVRA IS VERY CLEAR THAT THE COURT SHOULD AND HAS THE

21  RIGHT TO DO THAT AND THE VICTIMS HAVE THE RIGHT TO BE HEARD IN

22  THIS KIND OF PROCEEDING.

23       I THINK AT BOTTOM, BURKHOLDER STANDS FOR TWO PROPOSITIONS

24  AT A MINIMUM.  ONE IS THAT IT'S NOT THE CVRA THAT REQUIRES

25  INCLUSION OF THOSE STATEMENTS IN THE P.S.R.; AND, TWO, THAT THE

1     COURT DOES HAVE DISCRETION TO STRIKE THEM.

2         BUT I THINK REALLY AT THE HEART OF THIS, THE SORT OF

3     FUNDAMENTAL QUESTION IS REALLY WHAT THE PURPOSE OF A P.S.R. IS,

4     AND THAT'S TWO-FOLD.  ONE IS TO ASSIST THE DISTRICT COURT IN

5     FASHIONING A FAIR AND JUST SENTENCE; AND TWO IS FOR THE B.O.P.

6     TO USE IT AND ASSESS A PRISONER FOR INCARCERATION, TREATMENT,

7     AND RELEASE.

8         AS THE DEFENSE COUNSEL IN BURKHOLDER NOTED, THIS P.S.R.

9     WILL FOLLOW THE DEFENDANT THROUGH THEIR ENTIRE LIVES, THROUGH

10    THE SERVICE OF THE B.O.P. --

11        THE COURT:  OKAY.  BUT LET ME ASK YOU, ISN'T ONE OF

12    THE SECTIONS IN EVERY P.S.R. CALLED VICTIM IMPACT?  ISN'T THAT

13    ONE THING THAT THEY'RE SUPPOSED TO ASSESS?  SO YOU'RE SAYING,

14    ASSESS VICTIM IMPACT WITHOUT HEARING FROM ANY VICTIMS?  I

15    JUST -- I GUESS I JUST AM NOT CLEAR --

16        MR. GANTAR:  WELL, BUT --

17        THE COURT:  -- ON WHY THAT'S THE CASE.

18        MR. GANTAR:  BUT I THINK THERE'S A DIFFERENCE BETWEEN

19    A VICTIM ASSESSMENT VERSUS VERBATIM LANGUAGE FROM A VICTIM'S

20    STATEMENT, AND I THINK RULE 32 SUPPORTS THAT.

21        I THINK ALSO SOMETHING THAT'S IMPORTANT IS THAT THE P.S.R.

22    IS SUPPOSED TO CONTAIN ACCURATE INFORMATION.

23        NOW, WE'RE NOT CHALLENGING THAT THE INFORMATION IN THIS

24    P.S.R. IS NOT ACCURATE.

25        BUT THE THING IS --

```
 1              THE COURT:  THE P.S.R. IS SUPPOSED TO HELP ME ASSESS

 2     RESTITUTION.  HOW DO YOU ASSESS RESTITUTION WITHOUT HEARING

 3     FROM THE VICTIMS?

 4              MR. GANTAR:  WELL, THE INFORMATION SHOULD BE

 5     VERIFIED.  IN OTHER WORDS, THERE SHOULD BE SOMETHING MORE THAN

 6     JUST VERBATIM STATEMENTS FROM THE VICTIMS THEMSELVES.  THERE

 7     SHOULD BE SOME SORT OF FACTUAL INVESTIGATION INTO THAT.

 8         I DON'T THINK THE STATEMENTS THEMSELVES INCLUDED IN THE

 9     P.S.R. NECESSARILY FURTHER EITHER OF THOSE GOALS.

10              THE COURT:  BUT THESE ARE PEOPLE WHO HAVE BEEN

11     VERIFIED TO BE THE CHILDREN IN THESE PORN IMAGES AND PORN

12     VIDEOS.

13              MR. GANTAR:  WE'RE NOT DISPUTING THAT.

14              THE COURT:  ARE YOU DISPUTING THAT?

15              MR. GANTAR:  NO, WE'RE NOT.

16              THE COURT:  SO THEN WHAT ARE YOU SAYING, THAT THEY'RE

17     JUST LYING ABOUT THE IMPACT ON THEMSELVES?  THEY'VE ALREADY

18     BEEN VERIFIED AS BEING THE CHILDREN IN THESE VIDEOS AND IMAGES.

19         SO I'M JUST UNCLEAR THEN, WHAT IS NOT -- IS UNVERIFIED?

20              MR. GANTAR:  I THINK REALLY, TO SORT OF BOIL IT DOWN,

21     IS THAT OUR POSITION IS THAT INCLUSION OF THESE STATEMENTS

22     DOESN'T SERVE THE PURPOSE OF A P.S.R.

23         AND I THINK IT'S ALSO WORTH NOTING THAT -- THIS GOES ON TO

24     OBJECTION NUMBER 2 -- I THINK THAT THE MAJORITY OF THESE

25     STATEMENTS WERE ACTUALLY SUBMITTED BY NOT THE VICTIMS
```

1    THEMSELVES, BUT BY FAMILY MEMBERS, WHICH, I MEAN, WE'VE RAISED

2    ISSUE WITH THAT, TOO, BECAUSE I DON'T THINK THE CVRA GIVES

3    THOSE INDIVIDUALS THE RIGHT TO SUBMIT THOSE LETTERS, EITHER.

4         THE COURT:  DO YOU WANT TO RESPOND, MR. SIMEON?

5         MR. SIMEON:  WELL, ON THE LEGAL POINT, YOUR HONOR, I

6    JUST DON'T BELIEVE THAT BURKHOLDER SUPPORTS DEFENSE COUNSEL'S

7    CONTENTION.  I THINK BURKHOLDER BASICALLY SAYS IF THE VICTIM

8    IMPACT STATEMENT IS IRRELEVANT TO THE DEFENDANT'S CONDUCT, THEN

9    IT'S NOT ERROR FOR IT TO BE STRICKEN.

10   BUT THAT'S NOT APPLICABLE IN THIS CASE.  I JUST DON'T

11   BELIEVE THAT IT APPLIES FACTUALLY.

12   SECOND OF ALL, YES, VICTIM IMPACT IS ONE OF THE SECTIONS,

13   AND AN IMPORTANT SECTION, IN EVERY P.S.R.

14   P.S.R.'S INCLUDE A LOT OF INFORMATION, INCLUDING

15   INFORMATION FROM INTERVIEWS WITH THE DEFENDANT.  A LOT OF THAT

16   INFORMATION CANNOT BE VERIFIED, BUT IT'S INCLUDED BECAUSE

17   THAT'S WHAT IS TOLD TO THE PROBATION OFFICER.

18   THE PROBATION OFFICER IS NOT IN A POSITION TO VERIFY EVERY

19   CLAIM THAT EVERY DEFENDANT OR VICTIM OR INDIVIDUAL MAKING A

20   STATEMENT GOES INTO A P.S.R.

21   WE KNOW THAT THESE ARE REAL VICTIMS AND THEY'RE REAL

22   PEOPLE, AND THE SUFFERING DOES NOT JUST AFFECT THOSE

23   INDIVIDUALS WHEN THEY'RE MINORS.  IT STAYS WITH THEM.

24   AND IT AFFECTS THEIR FAMILIES BECAUSE THESE ARE MINORS

25   WHEN THEY'RE VICTIMIZED.  SO IT'S COMPLETELY PROPER FOR THEIR

1    FAMILY MEMBERS AND THEIR PARENTS TO EXPLAIN THE EFFECT THAT

2    THIS CRIME HAS HAD NOT JUST ON THE CHILDREN, BUT ON THE FAMILY

3    AS A WHOLE.

4         AND THERE ARE SO MANY -- THE DETAILS ARE HORRIFIC IF ONE

5    READS THESE LETTERS.

6         THE COURT:  WELL, THE FIRST OBJECTION IS OVERRULED.

7    I DON'T THINK THAT BURKHOLDER WOULD JUSTIFY THE EXCLUSION OF

8    THESE LETTERS, WHICH ARE ALL SPECIFIC ABOUT WHAT IT MEANS,

9    EVERY TIME I GET A VICTIM WITNESS LETTER THAT SAYS YET ANOTHER

10   PERSON HAS VIEWED ME BEING RAPED WHEN I WAS TWO YEARS OLD, FOUR

11   YEARS OLD, SEXUALLY MOLESTED.

12        I MEAN, JUST SOME OF THE THINGS THAT ARE SO DISTURBING

13   ABOUT WHAT HAS HAPPENED TO THESE PEOPLE, AND EVERY TIME THEY

14   HAVE TO KEEP GETTING YET ANOTHER NOTIFICATION THAT SOMEONE ELSE

15   IS LOOKING AT THESE IMAGES OF THEM BEING SEXUALLY ABUSED, EVERY

16   TIME IT'S A NEW HARM AND IT'S A NEW TRAUMA AND IT'S A NEW

17   VICTIMIZATION.

18        AND I THINK THEIR LETTERS GOING TO THAT HARM THAT'S CAUSED

19   BY MR. WELLS IS RELEVANT TO SENTENCING.  IT'S RELEVANT TO THE

20   VERY FIRST FACTOR I HAVE TO CONSIDER UNDER 18 U.S.C.

21   SECTION 3553, WHICH IS THE NATURE AND CIRCUMSTANCES OF THE

22   OFFENSE, AND ALL THE OTHER FACTORS IN THAT STATUTE.

23        LET'S GO TO THE SECOND OBJECTION.  IT SAYS, "THE DEFENDANT

24   OBJECTS THAT THE GOVERNMENT HAS NOT DIRECTLY DISCLOSED WHICH OF

25   THE INDIVIDUALS IDENTIFIED IN THE VICTIM IMPACT SECTION OF THE

1   REPORT ARE CURRENTLY MINORS BUT NOTED THAT IT APPEARED SEVERAL

2   OF THEM WERE NOT.  THE DEFENDANT OBJECTS TO THE INCLUSION OF

3   STATEMENTS FROM NON-MINOR VICTIMS' FAMILY MEMBERS AND

4   SPECIFICALLY CITED THE VICTIMS IN THE VICKY, JESSICA, JENNY,

5   MAUREEN, AND HENLEY SERIES."

6        NOW, I WOULD LIKE TO CITE SOME CASES ON WHY I THINK THAT

7   IS NOT CORRECT, JUST AS I DIDN'T THINK THAT BURKHOLDER SAID YOU

8   CAN'T INCLUDE THAT INFORMATION.

9        I WOULD LIKE TO -- OKAY.  SO THIS IS ACTUALLY A SIXTH

10  CIRCUIT DECISION.  IT'S UNITED STATES VERSUS WEINER,

11  W-E-I-N-E-R, FROM MARCH 25 OF 2013.

12       SO IN THIS CASE, THE DEFENDANT ARGUED THAT UNDER RULE 32,

13  THE MOTHER OF ONE OF THE VICTIMS WASN'T A CRIME VICTIM UNDER

14  THE FEDERAL RULE OF CRIMINAL PROCEDURE 32 BECAUSE THE MOTHER

15  WAS NOT DIRECTLY OR PROXIMATELY HARMED AND SHE WAS NOT THE

16  LEGAL GUARDIAN OF THE MINOR WHO WAS DIRECTLY OR PROXIMATELY

17  HARMED BY A FEDERAL OFFENSES.

18       AND THIS IS WHAT THE COURT SAID:  "DEFENDANT HAS NOT

19  OFFERED ANY EVIDENCE SHOWING THAT THE DISTRICT COURT COMMITTED

20  PLAIN ERROR.  EVEN ASSUMING THAT THE DISTRICT COURT COMMITTED

21  ERROR IN CHARACTERIZING THE MOTHER AS A 'CRIME VICTIM,'

22  DEFENDANT CANNOT SHOW THAT THE DISTRICT COURT COMMITTED PLAIN

23  ERROR IN CONSIDERING THE STATEMENT OF THE MOTHER.  FIRST, THE

24  FACT THAT 18 U.S.C. SECTION 3771 REQUIRES THE COURT TO CONSIDER

25  VICTIM-IMPACT TESTIMONY DOES NOT MEAN THAT THE DISTRICT COURT

1    CANNOT HEAR FROM OTHER INDIVIDUALS AT SENTENCING.  UNDER 18

2    U.S.C. SECTION 3661, 'NO LIMITATION SHALL BE PLACED ON THE

3    INFORMATION CONCERNING THE BACKGROUND, CHARACTER, AND CONDUCT

4    OF A PERSON CONVICTED OF AN OFFENSE WHICH A COURT OF THE

5    UNITED STATES MAY RECEIVE AND CONSIDER FOR THE PURPOSE OF

6    IMPOSING AN APPROPRIATE SENTENCE.'  COURTS ARE THUS PERMITTED

7    UNDER THIS SECTION TO 'CONSIDER THE WIDEST POSSIBLE BREADTH OF

8    INFORMATION ABOUT A DEFENDANT.'"

9        AND THAT WAS CITING PEPPER VERSUS UNITED STATES, 131

10   SUPREME COURT 1229, A 2011 DECISION OF THE U.S. SUPREME COURT.

11       "IN THE INSTANT CASE, THE TESTIMONY OF THE MOTHER OF

12   VICTIM NUMBER 2, DEFENDANT'S MOST RECENT VICTIM, WAS RELEVANT

13   TO THE BACKGROUND, CHARACTER, AND CONDUCT OF THE DEFENDANT AS

14   WELL AS THE 18 U.S.C. SECTION 3553(A) FACTORS THAT CONGRESS

15   EXPRESSLY INSTRUCTED DISTRICT COURTS TO CONSIDER AT

16   SENTENCING."

17       SO I THINK, UNDER THOSE STATUTES, I THINK IT IS

18   APPROPRIATE TO CONSIDER.  AS MR. SIMEON SAID, THE VICTIMS IN

19   THIS CASE, SOME OF THESE LETTERS, THEY WERE VICTIMIZED WHEN

20   THEY WERE TWO.  SO TO SAY THAT THE FAMILY CANNOT COMMENT ON

21   WHAT IT MEANT TO THAT YOUNG CHILD TO BE SUBJECT TO SEXUAL ABUSE

22   THAT'S BEEN VIDEOED, THAT'S BEEN PHOTOGRAPHED, AND THAT

23   CONTINUES TO CIRCULATE, THE FAMILY -- IT'S CLEAR THE FAMILY IS

24   HARMED AND THEY'RE DEALING WITH THE VICTIMS WHO ARE STILL

25   TRYING TO DEAL WITH WHAT HAPPENED TO THEM.

1        AND MANY OF THEM, AS ALL OF THESE EXPERTS SAY, HAVE A LOT

2   OF PROBLEMS AS A RESULT OF THIS, AND THAT IS AN ONGOING ISSUE

3   THAT THE FAMILIES HAVE TO DEAL WITH OF VERY, VERY DAMAGED

4   CHILDREN BECAUSE OF THE CRIMES THAT HAVE BEEN DONE TO THEM AND

5   THAT CONTINUE TO BE DONE TO THEM.

6        SO I AM GOING TO OVERRULE DEFENSE OBJECTION NUMBER 2 AS

7   WELL.

8        OKAY.  SO I THINK I'VE DEALT WITH THE OBJECTIONS.

9        ALL RIGHT.

10        (PAUSE IN PROCEEDINGS.)

11        THE COURT:  I MEAN, THESE LETTERS OF KIDS THAT WERE

12   SEXUAL ASSAULTED AND THE SEXUAL ASSAULTS BEING VIDEOED, THEY'RE

13   THREE YEARS OLD, THEY'RE FOUR YEARS OLD.  IT'S -- ONE OF THEM,

14   IT STARTED WHEN SHE WAS AN INFANT, WENT THROUGH 12 YEARS OLD,

15   AND THEN SHE GOT TOO PHYSICALLY MATURE, SO THEY WERE NO LONGER

16   INTERESTED IN MAKING THE VIDEOS WITH HER.

17        RAPED SINCE THREE YEARS OLD, MOLESTED -- I MEAN, IT'S --

18        MR. GANTAR:  IF I MAY JUST, YOUR HONOR?

19        THE COURT:  YEAH.

20        MR. GANTAR:  AND WE UNDERSTAND THE COURT'S

21   OBJECTION -- OR I'M SORRY -- THE COURT'S RULING ON THE

22   OBJECTION.

23        BUT JUST TO MAKE CLEAR THAT OUR OBJECTION IS A LITTLE MORE

24   SPECIFIC THAN THAT.  WE'RE ONLY OBJECTING TO THE INCLUSION OF

25   ANY LETTERS WRITTEN BY FAMILY ON BEHALF OF INDIVIDUALS WHO ARE

1    NO LONGER MINORS.  SO THAT'S THE SORT OF SPECIFIC OBJECTION

2    WE'RE MAKING, AND I JUST WANTED TO NOTE THAT.

3            THE COURT:  WELL, SOME OF THEM ARE STILL MINORS.  THE

4    CROSS TATTOO BRIGHT PINK TODDLER VICTIM WAS BORN IN 2006 --

5            MR. GANTAR:  I UNDERSTAND THAT.

6            THE COURT:  -- SO SHE'S ONLY 13.

7            MR. GANTAR:  WE'RE NOT OBJECTING TO THE PROPRIETY OF

8    THOSE LETTERS.

9            THE COURT:  AND LET'S GO TO PIA, AVA, AND MYA.

10   THEY'RE STILL TEENS AS OF FEBRUARY 19, 2019.

11           WELL, I STILL AM OVERRULING YOUR OBJECTION.  I THINK BASED

12   ON THAT SIXTH CIRCUIT LAW -- I MEAN, THE FAMILIES HAVE TO DEAL

13   WITH A VERY DAMAGED PERSON WHO'S BEEN RAPED AND THE RAPE HAS

14   BEEN VIDEOTAPED AND IS BEING DISTRIBUTED AND VIEWED BY PEOPLE

15   WHO ARE MASTURBATING TO THOSE IMAGES.

16           EVERY TIME THAT IS A NEW TRAUMA, AND I THINK THE FAMILY

17   ARE HAVING TO DEAL WITH THESE INDIVIDUALS WHO HAVE A LOT OF

18   PAIN AND A LOT OF HURT.  SO I THINK IT'S RELEVANT, JUST AS IT'S

19   RELEVANT WHETHER MR. WELLS'S CONVICTION IS HAVING A HARD TIME

20   ON HIS MOTHER.  WHY IS THAT RELEVANT, BUT FOR A VICTIM, IT'S

21   NOT RELEVANT?

22           MR. GANTAR:  OUR OBJECTION ISN'T THAT IT'S NOT

23   RELEVANT, YOUR HONOR.

24           THE COURT:  UM-HUM.

25           MR. GANTAR:  IT'S STRICTLY A STATUTORY ARGUMENT THAT

1    THE CVRA DOESN'T PERMIT THAT SORT OF SUBMISSION OF THAT KIND OF

2    LETTER.  IT'S REALLY THAT SPECIFIC.

3         THE COURT:  OKAY.  WELL, THE SENTENCING GUIDELINES

4    ARE SOMETHING THE COURT HAS TO CONSIDER AS AN INITIAL MATTER.

5    THEY ARE OBVIOUSLY NOT BINDING.

6         PURSUANT TO SECTION 2G2.2, THE BASE OFFENSE LEVEL IS 22.

7         THE DEFENDANT POSSESSED MATERIAL OF PREPUBESCENT MINORS OR

8    MINORS WHO HAD NOT YET OBTAINED THE AGE OF 12, SO THERE'S A TWO

9    LEVEL INCREASE.

10        SOME OF THIS MATERIAL INVOLVED THE SEXUAL ABUSE OF INFANTS

11   AND TODDLERS, SO THERE IS A FOUR LEVEL INCREASE FOR THAT.  ONE

12   EXAMPLE GIVEN IN THE P.S.R. IS OF A TWO TO THREE MONTH OLD GIRL

13   BEING SODOMIZED BY AN ADULT MALE.

14        MR. WELLS USED A LAPTOP COMPUTER AND INTERACTIVE COMPUTER

15   SERVICE TO RECEIVE AND VIEW THESE IMAGES.  THERE'S A TWO LEVEL

16   INCREASE FOR THAT.

17        AND THERE WERE OVER 600 IMAGES.  IN FACT, DEFENDANT HAS

18   ADMITTED TO MORE THAN 10,000 IMAGES OF CHILD PORNOGRAPHY.

19   THERE'S A FIVE LEVEL INCREASE FOR THAT.

20        HE HAS ACCEPTED RESPONSIBILITY.  THERE'S A THREE LEVEL

21   REDUCTION PURSUANT TO 3E1.1.

22        SO THE TOTAL OFFENSE LEVEL IS 32.

23        HE HAS NO CRIMINAL HISTORY, SO HIS CRIMINAL HISTORY

24   CATEGORY IS 1.

25        THIS PLACES HIM IN THE 121 TO 151 MONTH SENTENCING

 1      GUIDELINE RANGE.

 2           LET ME GO AHEAD AND CONSIDER THE FACTORS SET FORTH IN

 3      18 U.S.C. SECTION 3553.

 4           (PAUSE IN PROCEEDINGS.)

 5           THE COURT:  THE NATURE AND CIRCUMSTANCES OF THE

 6      OFFENSE ARE EXTREMELY AGGRAVATING.  THERE ARE OVER 10,000

 7      IMAGES.  SOME OF THEM INVOLVE -- MANY OF THEM WERE OF A LOT OF

 8      RAPE, URINATION ON CHILDREN, SEXUAL PLEASURE FROM FECES,

 9      FORCING SIBLINGS TO ENGAGE IN SEXUAL ACTS WITH EACH OTHER.

10      IT'S ALL PHOTOGRAPHED, VIDEOTAPED.

11           READING ALL THESE VICTIM IMPACT STATEMENTS WAS -- HAD A --

12      AND THESE ARE CONFIRMED VICTIMS.  THESE ARE CONFIRMED VICTIMS

13      OF THE VIDEOS AND IMAGES THAT WERE IN MR. WELLS'S POSSESSION.

14      IT'S A VERY SIGNIFICANT OFFENSE.

15           THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT, YOU

16      KNOW, I'D JUST NOTE, YOU KNOW, EVEN THOUGH MR. WELLS STATED

17      THAT THE VIDEO OF THE TWO TO THREE MONTH OLD BABY BEING

18      SODOMIZED BY THE ADULT MALE WAS ONE OF THE WORST HE'S EVER

19      SEEN, HE'S STILL SEEN IT HALF A DOZEN TIMES.  SO HE STILL CHOSE

20      TO SEE IT AT LEAST SIX TIMES.

21           HAVING A FOUR MONTH OLD GIRL BEING DIGITALLY PENETRATED BY

22      AN ADULT MALE, A SIX YEAR OLD GIRL WITH A KNIFE LYING ACROSS

23      HER STOMACH WITH THE WORDS "SLUT" AND "RAPE" WRITTEN ON HER IN

24      RED INK WITH HER GENITALS EXPOSED.

25           THIS IS A VERY SERIOUS OFFENSE HERE.

1       THERE WERE DIRTY USED SEX TOYS LOCATED THROUGHOUT HIS

2   HOME, BUT PARTICULARLY IN THE AREA WHERE HIS COMPUTER WAS

3   LOCATED.  THERE WERE PORNOGRAPHIC VIDEOS AND MAGAZINES IN

4   ALMOST EVERY ROOM OF HIS FOUR BEDROOM HOUSE.

5       ANYWAY, SO THE NATURE AND CIRCUMSTANCES OF THE OFFENSE ARE

6   SERIOUS.

7       THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT, THE ONLY

8   THING THAT I REALLY FIND IS MITIGATING AS TO HIM WAS THAT HE

9   WAS MOLESTED ONCE IN SECOND GRADE BY A FIFTH GRADE STUDENT IN

10  THE SCHOOL BATHROOM.  I THINK THAT IS TERRIBLE AND I'M REALLY

11  SORRY THAT THAT TOOK PLACE.

12      LET ME GO AHEAD AND TRY TO ESTABLISH THE BASES FOR A

13  VARIANCE.

14      I REALLY CANNOT SAY THAT HIM BEING AN ADVISOR FOR BOY

15  SCOUTS IS MITIGATING.  I'M, FRANKLY, CONCERNED AFTER I READ

16  ABOUT WHAT HAPPENED TO SOME OF THE BOYS IN THOSE VIDEOS.

17      BUT THERE WERE MORE THAN 30 FIREARMS COLLECTED FROM HIS

18  HOME, NONE OF WHICH WERE REGISTERED TO MR. WELLS.

19      ALL RIGHT.  LET ME FIND WHAT IS MITIGATING.

20      OKAY.  HIS FATHER DIED OF LUNG CANCER AT THE AGE OF 75 IN

21  2015.  HIS MOTHER RESIDES IN CHICO.  SHE HAS OBESITY, TYPE 2

22  DIABETES, HYPOTHYROIDISM, ARTHRITIS, HEARING LOSS, AND

23  BILATERAL KNEE REPLACEMENT.

24      HIS FATHER DRANK ALCOHOL DAILY AND HEAVILY.

25      NOW, MR. WELLS TOLD PROBATION THAT HIS ARREST IS WHAT

1    CAUSED HIM TO BE ESTRANGED WITH HIS BROTHER, BUT HIS MOTHER

2    INDICATED THAT HER SONS' RELATIONSHIP HAS BEEN STRAINED FOR

3    APPROXIMATELY THE PAST TEN YEARS, BUT SHE'S UNAWARE OF THE

4    REASON.

5         OKAY.  WHAT ELSE IS MITIGATING?

6         HE HAS SINUS INFECTIONS DUE TO SEASONAL ENVIRONMENTAL

7    ALLERGIES.  HE DISLOCATED HIS UPPER BACK IN A WORK-RELATED

8    INCIDENT IN 1996.  HE STRAINED HIS LOWER BACK IN THE MID-1990S.

9         HE'S NOT TAKING ANY PRESCRIPTION MEDICATIONS.

10        ALL RIGHT.  LET'S GO TO HIS EMPLOYMENT.

11        HE GRADUATED FROM HIGH SCHOOL IN 1996.  HE GRADUATED FROM

12   COLLEGE IN -- PARDON ME.  HE GRADUATED FROM HIGH SCHOOL IN

13   1991.  HE GRADUATED FROM CABRILLO COLLEGE IN 1996.

14        HE HAD DYSLEXIA.  HE WAS IN SPECIAL ED CLASSES IN SECOND

15   THROUGH FIFTH GRADE AND IN COLLEGE.

16        ALL RIGHT.  THE P.S.R. SAYS, AS FAR AS HIS EMPLOYMENT,

17   THAT FROM DECEMBER OF 2003 TO DECEMBER OF 2014, HE WAS A

18   FULL-TIME SHEET METAL FABRICATOR AND INSTALLER FOR VARIOUS

19   CALIFORNIA COMPANIES.  HE WAS PAID FULL-TIME UNION SCALE, BUT

20   WAS LAID OFF AT EACH COMPANY, WITH THE EXCEPTION OF THE LAST

21   ONE THAT LEFT THE UNION.

22        FROM JUNE OF 2011 THROUGH AUGUST OF 2014, HE WAS A

23   SHOOTING SPORTS DIRECTOR WORKING FIVE TO SEVEN WEEKS DURING THE

24   SUMMERS ONLY AT SILICON VALLEY MONTEREY BAY COUNSEL.

25        FROM JULY -- SO THAT EMPLOYMENT WAS ONLY DURING THE

1    SUMMER?

2              THE DEFENDANT:  YES.

3              THE COURT:  FROM JULY 1ST, 2015, THROUGH JULY 31ST,

4    2015, FOR ONE MONTH, HE WAS A TEMPORARY HELP SHEET METAL WORKER

5    WITH FRANK M. BOOTH.

6         FROM AUGUST OF 2015 THROUGH AUGUST OF 2016, SO FOR ABOUT A

7    YEAR, HE WAS A FULL-TIME METAL SHEET FABRICATOR AND INSTALLER,

8    BUT HE WAS LAID OFF.  THAT WAS WITH CRITCHFIELD MECHANICAL

9    INCORPORATED.

10        HE'S BEEN UNEMPLOYED SINCE SEPTEMBER OF 2016, SO FOR THE

11   LAST THREE YEARS AND THREE MONTHS.  BUT HE'S USING HIS SAVINGS

12   AND HIS MOTHER SUPPORTS HIM.

13        AS I SAID BEFORE, OVER 19 YEARS, HE'S LIVED IN A FOUR

14   BEDROOM, TWO BATHROOM HOUSE OWNED BY HIS MOTHER AND HAS NOT

15   PAID RENT.

16        WHAT HAVE I MISSED THAT'S MITIGATING THAT I CAN PUT IN THE

17   JUDGMENT FOR THE BASES FOR THE DOWNWARD VARIANCE?  ANYTHING

18   ELSE THAT'S MITIGATING THAT I'VE MISSED?

19              OFFICER MAR:  NO, YOUR HONOR.

20              THE COURT:  OKAY.  ALL RIGHT.

21        LET ME GO THROUGH WHY I'M VARYING DOWNWARD.

22        SO THE SENTENCE SHOULD REFLECT THE SERIOUSNESS OF THE

23   OFFENSE, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT

24   FOR THE OFFENSE, AFFORD ADEQUATE DETERRENCE TO CRIMINAL

25   CONDUCT, PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE

1    DEFENDANT, PROVIDE THE DEFENDANT WITH ANY NEEDED MEDICAL CARE,

2    BUT MOST IMPORTANTLY, THIS VARIANCE IS TO AVOID UNWARRANTED

3    SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO

4    HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT, AND THE NEED TO

5    PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE.

6         AND I HOPE THAT THEY DO GET RESTITUTION BECAUSE A LOT OF

7    THEM NEED A LOT OF COUNSELLING AND THERAPY.

8         SO ON THAT BASIS, PURSUANT TO THE SENTENCING REFORM ACT OF

9    1984, IT IS THE JUDGMENT OF THE COURT THAT MR. JONATHAN WELLS

10   IS HEREBY COMMITTED THE CUSTODY OF THE BUREAU OF PRISONS TO BE

11   IMPRISONED FOR A TERM OF 76 MONTHS.

12        THE COURT RECOMMENDS THAT THE DEFENDANT PARTICIPATE IN A

13   SEX OFFENDER TREATMENT PROGRAM.

14        UPON RELEASE FROM IMPRISONMENT, HE SHALL BE PLACED ON

15   SUPERVISED RELEASE FOR A TERM OF FIVE YEARS.

16        WITHIN 72 HOURS OF RELEASE FROM CUSTODY OF THE BUREAU OF

17   PRISONS, HE SHALL REPORT IN PERSON TO THE PROBATION OFFICE IN

18   THE DISTRICT TO WHICH HE IS RELEASED.

19        WHILE ON SUPERVISED RELEASE, THE DEFENDANT SHALL NOT

20   COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME; SHALL COMPLY

21   WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS

22   COURT, EXCEPT THAT THE MANDATORY DRUG TESTING PROVISION IS

23   SUSPENDED.

24        MR. WELLS, YOU SHALL COMPLY WITH THE FOLLOWING ADDITIONAL

25   CONDITIONS:

1        YOU MUST PAY ANY RESTITUTION AND SPECIAL ASSESSMENT THAT

2    IS IMPOSED BY THIS JUDGMENT AND THAT REMAINS UNPAID AT THE

3    COMMENCEMENT OF THE TERM OF SUPERVISED RELEASE.

4        YOU MUST COOPERATE IN THE COLLECTION OF DNA AS DIRECTED BY

5    THE PROBATION OFFICER.

6        YOU MUST SUBMIT YOUR PERSON, RESIDENCE, OFFICE, VEHICLE,

7    ELECTRONIC DEVICES AND THEIR DATA, INCLUDING CELL PHONES,

8    COMPUTERS, AND ELECTRONIC STORAGE MEDIA, AND ANY PROPERTY UNDER

9    YOUR CONTROL TO A SEARCH.  SUCH A SEARCH MUST BE CONDUCTED BY A

10   UNITED STATES PROBATION OFFICER OR ANY FEDERAL, STATE, OR LOCAL

11   LAW ENFORCEMENT OFFICER AT ANY TIME, WITH OR WITHOUT SUSPICION.

12   FAILURE TO SUBMIT TO SUCH A SEARCH MAY BE GROUNDS FOR

13   REVOCATION.  YOU MUST WARN ANY RESIDENTS THAT THE PREMISES MAY

14   BY SUBJECT TO SEARCHES.

15       NOW, LET ME TALK ABOUT THE OBJECTIONS TO THE CONDITIONS 4

16   AND 6 THAT WERE MADE IN THE DEFENDANT'S SENTENCING MEMO.

17       SO UNITED STATES VERSUS BARSUMYAN, B-A-R-S-U-M-Y-A-N,

18   517 F.3D 1154, IT'S A NINTH CIRCUIT CASE FROM 2008, I'M JUST

19   GOING TO READ FROM FOOTNOTE 11.  QUOTE, "WHEN THIS COURT HAS

20   UPHELD CONDITIONS RESTRICTING INTERNET ACCESS IN CASES

21   INVOLVING CHILD PORNOGRAPHY, IT HAS DONE SO CITING THE STRONG

22   LINK BETWEEN CHILD PORNOGRAPHY AND THE INTERNET AND THE NEED TO

23   PROTECT THE PUBLIC, PARTICULARLY CHILDREN, FROM SEX OFFENDERS."

24       UNITED STATES VERSUS REARDEN, R-E-A-R-D-E-N, 349 F.3D 608,

25   621, NINTH CIRCUIT, 2003, QUOTING UNITED STATES VERSUS ZINN,

1    Z-I-N-N, 321 F.3D 1084, 1093, ELEVENTH CIRCUIT, 2003: "WE ARE

2    AWARE OF NO PUBLISHED CASES APPROVING INTERNET RESTRICTIONS

3    IMPOSED ON A DEFENDANT CONVICTED OF A NON-SEXUAL OFFENSE, LET

4    ALONE A RESTRICTION ON ALL COMPUTER-RELATED DEVICES, WHETHER

5    INTERNET CAPABLE OR NOT."

6         SO IN THIS CASE IT'S CLEARLY SAYING THAT YOU CAN RESTRICT

7    INTERNET ACCESS IN CASES INVOLVING CHILD PORNOGRAPHY.  I'M

8    CITING THAT THERE IS A STRONG LINK BETWEEN CHILD PORNOGRAPHY

9    AND THE INTERNET, AND THE NEED TO PROTECT THE PUBLIC,

10   PARTICULARLY CHILDREN, FROM SEX OFFENDERS; BUT ALSO TO PROTECT

11   THE VICTIMS OF THESE CHILD PORNOGRAPHY OFFENSES FROM BEING

12   REVICTIMIZED EVERY TIME THEY KEEP GETTING THESE HUNDREDS AND

13   HUNDREDS OF VICTIM WITNESS LETTERS SAYING YET SOMEONE ELSE HAS

14   VIEWED YOUR IMAGE OF YOU BEING RAPED WHEN YOU WERE TWO YEARS

15   OLD.

16        LET ME READ ALSO FROM UNITED STATES VERSUS LACOSTE, 821

17   F.3D 1187.  IT'S A NINTH CIRCUIT DECISION FROM 2016.  I'M

18   CITING FROM PAGE 1191.  QUOTE, "PUBLISHED DECISIONS IN OUR

19   CIRCUIT HAVE UPHELD CONDITIONS BARRING ALL INTERNET USE ONLY

20   WHEN THE OFFENSES AT ISSUE INVOLVE CHILD PORNOGRAPHY OR SEXUAL

21   ABUSE OF MINORS."

22        IT CITES THE BARSUMYAN CASE, AND IT ALSO CITES ANOTHER

23   NINTH CIRCUIT CASE, UNITED STATES VERSUS SALES, S-A-L-E-S,

24   476 F.3D 732 AT 736, NOTE 2, NINTH CIRCUIT, 2007.

25        SO, I MEAN, I HAVE RECENT NINTH CIRCUIT CASES FROM 2016

1    SAYING THAT YOU CAN BAR ALL INTERNET USE IN CHILD PORNOGRAPHY

2    CASES INVOLVING MINORS, FOR SEXUAL ABUSE OF MINORS, WHICH THIS

3    CASE DOES.

4          SO I AM GOING TO IMPOSE THESE CONDITIONS.

5          NUMBER 4.  YOU MUST NOT POSSESS OR USE A COMPUTER WITHOUT

6    THE PRIOR APPROVAL OF THE PROBATION OFFICER.  COMPUTER INCLUDES

7    ANY ELECTRONIC DEVICE CAPABLE OF ACCESSING THE INTERNET OR

8    PROCESSING OR STORAGE DATA AS DESCRIBED AT U.S.C. SECTION

9    1030(E)(1), INCLUDING CELL PHONES, AND ALL PERIPHERAL DEVICES.

10         SO THIS DOESN'T MEAN YOU CAN'T HAVE ONE.  IT JUST MEANS

11   THAT THE PROBATION OFFICER HAS TO APPROVE IT BEFORE YOU POSSESS

12   OR USE IT.

13         NUMBER 5.  AS DIRECTED BY THE PROBATION OFFICER, YOU MUST

14   ENROLL IN THE PROBATION OFFICE'S COMPUTER AND INTERNET

15   MONITORING PROGRAM AND MUST ABIDE BY THE REQUIREMENTS OF THE

16   CIMP PROGRAM AND THE ACCEPTABLE USE CONTRACT.

17         YOU MUST NOT ACCESS THE INTERNET OR ANY ONLINE COMPUTER

18   SERVICE AT ANY LOCATION, INCLUDING EMPLOYMENT, WITHOUT THE

19   PRIOR APPROVAL OF THE PROBATION OFFICER.  ONLINE SERVICES

20   INCLUDE ANY INTERNET SERVICE PROVIDER, OR ANY OTHER PUBLIC OR

21   PRIVATE COMPUTER NETWORK.  AS DIRECTED BY THE PROBATION

22   OFFICER, YOU MUST WARN YOUR EMPLOYER OF RESTRICTIONS TO YOUR

23   COMPUTER USE.

24         YOU MUST CONSENT TO THE PROBATION OFFICER CONDUCTING

25   PERIODIC UNANNOUNCED EXAMINATIONS OF YOUR COMPUTER EQUIPMENT,

1    WHICH MAY INCLUDE RETRIEVAL AND COPYING OF ALL DATA FROM YOUR

2    COMPUTERS, AND ANY PERIPHERAL DEVICE TO ENSURE COMPLIANCE WITH

3    THIS CONDITION, AND/OR REMOVAL OF ANY SUCH EQUIPMENT FOR THE

4    PURPOSE OF CONDUCTING MORE THOROUGH INSPECTION.  YOU MUST ALSO

5    CONSENT TO THE INSTALLATION OF ANY HARDWARE OR SOFTWARE AS

6    DIRECTED BY THE PROBATION OFFICER TO MONITOR YOUR INTERNET USE.

7         YOU MUST NOT POSSESS OR USE ANY DATA ENCRYPTION TECHNIQUE

8    OR PROGRAM.

9         YOU MUST NOT ACCESS OR USE ANY FILE-SHARING P2P NETWORK OR

10   SOFTWARE, INCLUDING BUT NOT LIMITED TO, EMULE, GNUTELLA, G2,

11   EDONKEY, CAZAA, LIMEWIRE, BEARSHARE, MORPHEUS, AND ACQUISITION,

12   WITHOUT THE CONSENT OF THE PROBATION OFFICER.

13        YOU MUST NOT POSSESS, IN ANY FORM, MATERIALS DEPICTING

14   CHILD PORNOGRAPHY, CHILD EROTICA, OR NUDE OR SEXUAL DEPICTIONS

15   OF ANY CHILD OR ANY MATERIALS DESCRIBED AT 18 U.S.C.

16   SECTION 2256, SUBSECTION 8.

17        YOU MUST NOT FREQUENT OR LOITER WITHIN 100 FEET OF ANY

18   LOCATION WHERE CHILDREN ARE LIKELY TO GATHER, OR HAVE CONTACT

19   WITH ANY CHILD UNDER THE AGE OF 18, UNLESS OTHERWISE APPROVED

20   BY THE PROBATION OFFICER.  CHILDREN ARE LIKELY TO GATHER IN

21   LOCATIONS INCLUDING, BUT NOT LIMITED TO, PLAYGROUNDS, THEME

22   PARKS, PUBLIC SWIMMING POOLS, SCHOOLS, ARCADES, CHILDREN'S

23   MUSEUMS, OR OTHER SPECIFIC LOCATIONS AS DESIGNATED BY THE

24   PROBATION OFFICER.  THIS PROVISION DOES NOT ENCOMPASS PERSONS

25   UNDER THE AGE OF 18 SUCH AS WAITERS, CASHIERS, TICKET VENDORS,

1    ET CETERA, WITH WHOM YOU MUST DEAL IN ORDER TO OBTAIN ORDINARY

2    AND USUAL COMMERCIAL SERVICES.

3          YOUR EMPLOYMENT MUST BE APPROVED BY THE PROBATION OFFICER,

4    AND ANY CHANGE IN EMPLOYMENT MUST BE PREAPPROVED BY THE

5    PROBATION OFFICER.  YOU MUST SUBMIT THE NAME AND ADDRESS OF THE

6    PROPOSED EMPLOYER TO THE PROBATION OFFICER AT LEAST TEN DAYS

7    PRIOR TO ANY SCHEDULED CHANGE.

8          YOUR RESIDENCE MUST BE APPROVED BY THE PROBATION OFFICER,

9    AND ANY CHANGE IN RESIDENCE MUST BE PREAPPROVED BY THE

10   PROBATION OFFICER.  YOU MUST SUBMIT THE ADDRESS OF ANY PROPOSED

11   RESIDENTIAL TO THE PROBATION OFFICER AT LEAST TEN DAYS PRIOR TO

12   ANY SCHEDULED CHANGE.

13         YOU MUST REGISTER WITH THE STATE SEX OFFENDER REGISTRATION

14   AGENCY AS REQUIRED BY STATE LAW.  YOU MUST PROVIDE PROOF OF

15   REGISTRATION TO THE PROBATION OFFICER WITHIN THREE DAYS OF

16   RELEASE FROM IMPRISONMENT/PLACEMENT ON SUPERVISION.  IN ANY

17   STATE THAT HAS ADOPTED THE REQUIREMENTS OF THE SEX OFFENDER

18   REGISTRATION NOTIFICATION ACT, 42 U.S.C. SECTION 6901, ET SEQ.,

19   YOU MUST ALSO COMPLY WITH ALL SUCH REQUIREMENTS AS DIRECTED BY

20   THE PROBATION OFFICER, THE BUREAU OF PRISONS, OR ANY STATE SEX

21   OFFENDER REGISTRATION AGENCY IN WHICH YOU RESIDE, ARE A

22   STUDENT, OR WERE CONVICTED OF A QUALIFYING OFFENSE.

23         YOU MUST PARTICIPATE IN SEX OFFENDER SPECIFIC TREATMENT AS

24   DIRECTED BY THE PROBATION OFFICER.  YOU ARE TO PAY PART OR ALL

25   OF THE COST OF THIS TREATMENT, AT AN AMOUNT NOT TO EXCEED THE

```
 1    COST OF TREATMENT, AS DEEMED APPROPRIATE BY THE PROBATION

 2    OFFICER.  THE ACTUAL COPAYMENT SCHEDULE MUST BE DETERMINED BY

 3    THE PROBATION OFFICER.  THE PROBATION OFFICER MAY RELEASE ALL

 4    PREVIOUS MENTAL HEALTH EVALUATIONS TO THE TREATMENT PROVIDER.

 5         AS PART OF THE TREATMENT PROGRAM, YOU MUST SUBMIT TO

 6    POLYGRAPH TESTING AS RECOMMENDED BY THE TREATMENT PROVIDER.

 7    HOWEVER, YOU RETAIN YOUR FIFTH AMENDMENT RIGHT TO REFUSE TO

 8    ANSWER QUESTIONS ASKED DURING THE COURSE OF TREATMENT ABSENT A

 9    GRANT OF USE AND DERIVATIVE USE IMMUNITY.

10         AS PART OF THE TREATMENT PROGRAM, YOU MUST SUBMIT TO

11    PSYCHOLOGICAL TESTING AS RECOMMENDED BY THE TREATMENT PROVIDER.

12         IT IS FURTHER ORDERED THAT THE DEFENDANT SHALL PAY TO THE

13    UNITED STATES A SPECIAL ASSESSMENT OF $100.  PAYMENTS SHALL BE

14    MADE TO THE CLERK OF U.S. DISTRICT COURT, 450 GOLDEN GATE

15    AVENUE, BOX 36060, SAN FRANCISCO, CALIFORNIA, 94102.  DURING

16    IMPRISONMENT, PAYMENT OF CRIMINAL MONETARY PENALTIES ARE DUE AT

17    THE RATE OF NOT LESS THAN $25 PER QUARTER, AND PAYMENTS SHALL

18    BE THROUGH THE BUREAU OF PRISONS INMATE FINANCIAL

19    RESPONSIBILITY PROGRAM.

20         THE COURT FINDS THAT THE DEFENDANT DOES NOT HAVE THE

21    ABILITY TO PAY THE FINE -- WHAT IS THE JVTA ASSESSMENT?

22             OFFICER MAR:  THAT'S FOR SEX OFFENSE CASES, AND IT'S

23    USUALLY $5,000 PER COUNT, UNLESS THE COURT FINDS THAT THE

24    DEFENDANT IS INDIGENT.  AND BASED ON HIS LACK OF INCOME AND THE

25    FACT THAT HE'S BEING SUPPORTED --
```

1        THE COURT:  WELL, HE HAS INCOME FROM HIS MOTHER, BUT

2    HE DOESN'T HAVE EMPLOYMENT INCOME.

3        OFFICER MAR:  RIGHT.

4        THE COURT:  I WILL ORDER IT WAIVED, BECAUSE I'D LIKE

5    WHATEVER FUNDS THAT ARE AVAILABLE TO GO TO THE VICTIMS AS

6    RESTITUTION.  SO THAT IS WAIVED AND THE FINE IS WAIVED.

7        NOW, THE RESTITUTION AMOUNT WILL BE DETERMINED -- WELL,

8    WE'VE ALREADY SET A RESTITUTION STATUS CONFERENCE FOR

9    FEBRUARY 12TH, 2020, AT 9:15 A.M., AND A RESTITUTION HEARING,

10   IF IT'S NECESSARY, FOR FEBRUARY 26TH OF 2020.

11       I APPRECIATE THAT MR. WELLS SAYS THAT HE WOULD LIKE TO PAY

12   RESTITUTION.  THANK YOU.

13       IT'S CLEAR FROM THE VICTIM IMPACT STATEMENTS THAT THE

14   VICTIMS WOULD VERY MUCH BENEFIT FROM PSYCHOLOGICAL COUNSELLING

15   AND THERAPY, AND VIRTUALLY ALL OF THEM CAN'T AFFORD IT.

16       THE DEFENDANT'S INTEREST IN THE FOLLOWING PROPERTY SHALL

17   BE FORFEITED TO THE UNITED STATES:

18       A HEWLETT-PACKARD LAPTOP, SERIAL NUMBER 5CH11E2W;

19       A WESTERN DIGITAL INTERNAL HARD DRIVE, SERIAL NUMBER

20   WCANK2192392;

21       A WESTERN DIGITAL INTERNAL HARD DRIVE, SERIAL NUMBER

22   WCANK2192459;

23       A WESTERN DIGITAL INTERNAL HARD DRIVE, SERIAL NUMBER

24   WCAZA4410917T.

25       MS. SHORTRIDGE, DID YOU GET THAT?  I MAY HAVE BEEN

1    UNCLEAR.  WCAZA.

2         A SEAGATE EXTERNAL HARD DRIVE, SERIAL NUMBER NA5JGZ14;

3         AN ANTEC COMPUTER TOWER, SERIAL NUMBER VN643ECDEATU1D;

4         A MICROSOFT ZUNE DIGITAL MEDIA PLAYER, SERIAL NUMBER

5    014555101915;

6         AND 69 COMPACT DISCS.

7              MR. GANTAR:  JUST ONE POINT ON THAT, YOUR HONOR.

8              THE COURT:  YES.

9              MR. GANTAR:  PARAGRAPH G OF THE FORFEITURE, THE

10   MICROSOFT ZUNE DIGITAL MEDIA PLAYER, I'VE INFORMED THE

11   GOVERNMENT THAT I RECENTLY LEARNED THAT THAT MATERIAL WAS

12   ACCIDENTALLY GIVEN TO MR. WELLS BY DHS AGENTS WHEN HE WENT TO

13   RETRIEVE HIS PROPERTY.  I HAVE TOLD THE GOVERNMENT AND I HAVE

14   ADVISED MR. WELLS TO FORFEIT THAT PROPERTY IMMEDIATELY.

15             MR. SIMEON:  YOUR HONOR, I'LL DOUBLE-CHECK WITH THE

16   AGENT.  THAT WAS ORIGINALLY INCLUDED IN THE PLEA AGREEMENT AS A

17   FORFEITURE ITEM.

18        AS MR. GANTAR MADE ME AWARE OF THAT, I DOUBLE-CHECKED, AND

19   APPARENTLY THAT PARTICULAR ITEM IN G DOES NOT HAVE ANY CHILD

20   PORNOGRAPHY, SO THE GOVERNMENT WOULD BE FINE IF THAT IS REMOVED

21   FROM THE FORFEITURE ORDER.

22             THE COURT:  OH, OKAY.  WELL, THANK YOU FOR BRINGING

23   THAT UP.

24        ALL RIGHT.  I'LL REMOVE THAT.  THAT'S THE MICROSOFT ZUNE

25   DIGITAL MEDIA PLAYER.  I'LL REMOVE THAT FROM THE FORFEITURE

1       ORDER.

2           DO WE NEED TO DISMISS ANY COUNTS?

3               MR. SIMEON:  NO, YOUR HONOR.

4               THE COURT:  IT'S ONLY A ONE COUNT INFORMATION?

5               MR. SIMEON:  THAT'S CORRECT.

6               THE COURT:  OKAY.  SO THERE'S NOTHING TO DISMISS

7       THERE.

8               THE CLERK:  YOUR HONOR, DID YOU READ THE SECTION

9       REGARDING PAYMENT OF RESTITUTION?

10              THE COURT:  WELL, THE PROBLEM IS I CAN'T ORDER

11      RESTITUTION RIGHT NOW.  I MEAN, I GUESS -- I DID READ THE

12      PAYMENT OF THE SPECIAL ASSESSMENT.  I THINK THE RESTITUTION,

13      LET'S WAIT ON THAT UNTIL THE RESTITUTION HEARING.

14              THE CLERK:  THANK YOU.

15              THE COURT:  THANK YOU, THOUGH, FOR RAISING THAT.  I

16      JUST DON'T HAVE AN AMOUNT, SO I'LL WAIT ON THAT.

17              THE CLERK:  UNDERSTOOD.

18              THE COURT:  OKAY.  WE DON'T HAVE TO DISMISS ANY

19      COUNTS.

20          I CAN DEAL WITH ANY INTEREST ON RESTITUTION AT THE

21      RESTITUTION HEARING.

22          OKAY.  THEN I THINK IT'S JUST THE FINAL ADVISEMENT.

23          ALL RIGHT.  MR. WELLS, THERE WAS A PLEA AGREEMENT IN YOUR

24      CASE, AND IN PARAGRAPH 4 OF YOUR PLEA AGREEMENT, YOU GAVE UP

25      YOUR RIGHT TO APPEAL YOUR CONVICTION, THE JUDGMENT, ORDERS OF

1    THE COURT, ANY ASPECT OF YOUR SENTENCE, INCLUDING ANY

2    FORFEITURE OR RESTITUTION ORDER.

3         BUT YOU DID KEEP THE RIGHT TO CLAIM THAT YOUR COUNSEL WAS

4    NOT EFFECTIVE IN REPRESENTING YOU.

5         IF YOU WISH TO FILE A NOTICE OF APPEAL ON THE BASIS THAT

6    YOUR COUNSEL WAS NOT EFFECTIVE IN REPRESENTING YOU, YOU MUST DO

7    SO IN WRITING WITHIN 14 DAYS OF ENTRY OF JUDGMENT.

8         IF YOU CANNOT PAY YOUR FILING FEES, YOU HAVE THE RIGHT TO

9    APPLY TO PROCEED IN FORMA PAUPERIS.

10        SIR, IN PARAGRAPH 5 OF YOUR PLEA AGREEMENT, YOU AGREE NOT

11   TO FILE ANY COLLATERAL ATTACK ON YOUR CONVICTION OR YOUR

12   SENTENCE, INCLUDING A PETITION UNDER 28 U.S.C., SECTIONS 2255

13   AND 2241.

14        BUT YOU DID KEEP THE RIGHT TO CLAIM THAT YOUR LAWYER WAS

15   NOT EFFECTIVE IN REPRESENTING YOU.

16        IN THAT SAME SECTION, YOU ALSO AGREE NOT TO SEEK RELIEF

17   UNDER 18 U.S.C. SECTION 3582.

18        NOW, HAVE I MISSED ANYTHING?  OFFICER MAR?

19            THE CLERK:  SURRENDER DATE?

20            OFFICER MAR:  YEAH, JUST SELF-SURRENDER.

21            THE COURT:  THAT'S RIGHT.  WE HAVE TO DO THAT.  THANK

22   YOU.

23        DID YOU WANT ME TO MAKE ANY RECOMMENDATIONS TO HAVE

24   HOUSING NEAR CHICO?

25            MR. GANTAR:  YES, PLEASE.

1          THE COURT:  OKAY.  SO I'M GOING TO RECOMMEND TO THE

2     BUREAU OF PRISONS THAT MR. WELLS PLEASE BE HOUSED IN A BUREAU

3     OF PRISONS FACILITY AS CLOSE AS POSSIBLE TO CHICO, CALIFORNIA

4     TO FACILITATE FAMILY VISITS.

5          THERE'S NO OBJECTION TO A SELF-SURRENDER DATE FROM THE

6     GOVERNMENT; IS THAT CORRECT?

7          MR. SIMEON:  NO OBJECTION, YOUR HONOR.

8          THE COURT:  OKAY.  THEN I'M GOING TO ORDER THAT

9     MR. WELLS SELF-SURRENDER ON FEBRUARY 12TH, FEBRUARY 12TH OF

10    2020 AT 2:00 P.M. AT THE FACILITY TO WHICH YOU HAVE BEEN

11    DESIGNATED BY THE BUREAU OF PRISONS.

12         WHAT ELSE HAVE I MISSED?  OFFICER MAR?

13         OFFICER MAR:  DOES HE WAIVE HIS RIGHT TO BE PRESENT

14    FOR THE RESTITUTION HEARING?

15         THE COURT:  OH, THAT'S A GOOD POINT.  WELL, HE'LL

16    STILL -- HMM, YES, THAT'S RIGHT.

17         HOW DO YOU WANT TO HANDLE THAT, MR. GANTAR?  WOULD YOU

18    LIKE HIM TO BE PRESENT?

19         MR. GANTAR:  WHAT DATE DID WE SET?  IS IT BEFORE THE

20    SURRENDER DATE?

21         THE COURT:  WE SET THE EXACT SAME DATE.

22         MR. GANTAR:  OH, I SEE.

23         THE COURT:  YEAH.  NOW, THAT'S NOT EVEN THE HEARING;

24    RIGHT?

25         OFFICER MAR:  NO.

1          THE COURT:  THE HEARING IS THE 26TH, IF WE HAVE

2     ONE --

3          MR. GANTAR:  SURE.

4          THE COURT:  -- WHICH I HOPE YOU'LL BE ABLE TO WORK

5     THIS OUT WITH EACH OTHER AND THE VICTIMS AND THE PROBATION

6     OFFICE.

7          MR. GANTAR:  AND LIKE I SAID, I'M PRETTY CONFIDENT

8     THAT WE WILL.

9          WOULD THE COURT BE AMENABLE TO SETTING A SURRENDER DATE

10    THAT'S EITHER THAT SAME DAY OR THE FOLLOWING DAY?

11         THE COURT:  THAT'S FINE.  YOU WANT TO SAY

12    FEBRUARY 13TH?

13         THE DEFENDANT:  THE NEAREST ONE FOR --

14         MR. GANTAR:  THAT'S RIGHT.  IT WOULD BE AN ISSUE --

15    DEPENDING ON WHERE HE'S DESIGNATED, IT WOULD BE DIFFICULT

16    OBVIOUSLY FOR HIM TO GET THERE THAT SAME DAY.  SO IF THE COURT

17    WOULD KINDLY SET THE 13TH?

18         THE COURT:  THAT'S FINE.  FEBRUARY 13TH OF 2020 AT

19    2:00 P.M., PLEASE, AT THE BUREAU OF PRISONS FACILITY TO WHICH

20    YOU'VE BEEN DESIGNATED.

21         ALL RIGHT.  WHAT ELSE HAVE I MISSED, OFFICER MAR?  I

22    APPRECIATE YOU CATCHING EVERYTHING.

23         OFFICER MAR:  I THINK THAT IS IT.

24         THE COURT:  IS THAT IT?

25         OFFICER MAR:  YES.

1          THE COURT:  OKAY.  MR. SIMEON, ANYTHING ELSE?

2          MR. SIMEON:  I THINK THAT'S ALL.

3          THE COURT:  MR. GANTAR, ANYTHING ELSE?

4          MR. GANTAR:  NOTHING, YOUR HONOR.

5          THE COURT:  I APPRECIATE MR. WELLS'S MOTHER COMING

6    ALL THE WAY DOWN FROM CHICO.  THAT'S A LONG TRIP.

7          AND GOOD LUCK TO YOU, MR. WELLS.  TAKE CARE OF YOURSELF,

8    SIR.

9          MR. GANTAR:  THANK YOU, YOUR HONOR.

10          MR. SIMEON:  THANK YOU, YOUR HONOR.

11          THE COURT:  LET'S TAKE A FIVE MINUTE BREAK.  IS IT

12    11:30?

13          THE CLERK:  YES, IT IS, YOUR HONOR.

14          THE COURT:  BEFORE EVERYONE LEAVES, IS THERE ANY

15    REASON WHY THE SENTENCE I'VE JUST STATED SHOULD NOT BE IMPOSED?

16          OFFICER MAR:  NO, YOUR HONOR.

17          MR. SIMEON:  NO, YOUR HONOR.

18          MR. GANTAR:  NO, YOUR HONOR.

19          THE COURT:  ALL RIGHT.  THE SENTENCE I'VE JUST STATED

20    IS IMPOSED ON MR. WELLS.

21          ALL RIGHT.  GOOD LUCK TO YOU, SIR.  THANK YOU ALL.

22          (THE PROCEEDINGS WERE CONCLUDED AT 11:32 A.M.)

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  FEBRUARY 5, 2020

19

20

21

22

23

24

25